Charles R. ROMER, Sr., et
al., Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 81–695.

District of Columbia Court of Appeals.

Argued July 1, 1982.

Decided Aug. 31, 1982.

Wayne M. Mansulla, Washington, D.C.,
with whom Patrick S. Guilfoyle, Washington, D.C., was on the brief, for appellants.

William J. Earl, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and PRYOR, Associate Judges.

KELLY, Associate Judge:

This appeal from an award of damages, entered after a jury verdict, presents the issues of whether the trial court erred in denying appellants' motion for new trial based on the claim that the verdict was grossly insubstantial, in instructing the jury not to award damages to appellant Charles Romer for future medical expenses, and in vacating appellant June Romer's award for loss of consortium. We reverse as to the jury award to Mrs. Romer and otherwise affirm.[1]

On November 12, 1974, appellant Charles Romer,[2] a pipe fitter for the John C. Grimberg Construction Company, slipped and fell on a slippery material and injured his back. The company was then under contract to the District of Columbia and performing services at the Blue Plains Sewage Treatment Facility.

Appellant testified to a history of back problems. In 1972, he sprained his back and experienced pain down his legs. This injury was aggravated in 1973 when he strained his back while reaching for a fire extinguisher. He had an operation in June 1974, to relieve back and neck strain, after which his surgeon, Dr. Lorenzo Marcolin, advised him that he could return to work on light duty status. Romer testified that he returned to work in September 1974, at a time when his back did not bother him. He stated that he was never given light duty, but did say that he worked with lighter weight pipe than some of the other workers.

Dr. Marcolin testified that on November 4, 1974, nine days before the instant accident, appellant was experiencing low back pain, especially at the end of the day, mild radiation to the right buttock, numbness and tingling in the left buttock, and a flareup of neck problems. He determined that appellant had a 35% disability in his back and a 15% disability in his neck. On the whole, the doctor was pleased with Romer's progress since the June 1974 operation. He prescribed Tandearil and a back brace.

Dr. Marcolin examined appellant immediately after the November 12 accident, and found that the fall had severely aggravated appellant's back problems, causing pain and radiation down the left leg and pain in the neck with numbness into the left hand. No evidence of a recurrent herniated disc or of a new rupture was found.

On April 4, 1975, Dr. Marcolin performed a lumbar laminectomy and found that appellant had a herniated or extruded disc. His opinion was that the November 1974 accident caused the disc problem because he had observed the same disc during the June 1974 operation and it was then hard and calcified. In 1976, Romer experienced excruciating pain while turning over in bed. A subsequent myelogram revealed a bulging disc. Dr. Marcolin believed that this problem was also caused by the November 1974 fall. He testified that Romer next visited a Dr. Leroy at a pain clinic in Wilmington, Delaware, and received some relief.

At an office visit on September 30, 1976, Dr. Marcolin noted that appellant had been fitted earlier with a transcutaneous nerve stimulator. He had been off pain medication for eight weeks and was getting along reasonably well. At his most recent visit before trial, on November 24, 1980, appellant had no more than 15% motion in any plane of his back. Dr. Marcolin concluded that Romer was totally disabled, that he would never return to employment

---

1. Appellants additionally contend that the trial court erred in refusing to give a requested instruction on causation. This point is purely academic since the jury found appellee legally responsible for appellants' injuries.

2. Hereafter, when speaking of appellant, we refer to Charles Romer.

as a pipe fitter, and that most of his back problems dated from his November 1974 fall.

Dr. Gerald Schuster examined appellant on June 8, 1979, and testified that he is a poor candidate for future surgery. Dr. Schuster did recommend that Romer lose weight and participate in a psychological behavioral counseling group so that he could learn to cope with his pain, but Romer failed to follow these suggestions. He found a 50% permanent disability which he related to appellant's spinal problem, and it was his opinion that the disability and restrictions were related to the November 1974 fall. Dr. Schuster concluded that Romer could never return to work as a pipe fitter because the job requires heavy lifting. He stated that appellant should not be a laborer or do work requiring excessive bending and twisting. He also recommended that Romer attend a pain clinic and enter a rehabilitation program.

Dr. Harvey Ammerman also testified that appellant was not a candidate for future surgery. He felt that a training program could be developed for Romer to do light work so that he could be fully employed. He recommended a job where Romer could move around and sit or stand. Dr. Ammerman testified that had appellant not experienced the November 1974 injury, he could have only worked as a pipe fitter for three months to three years because of his earlier injuries and operations.

Appellant testified that he is in constant pain from his back injury; his wife testified that after November 12, 1974, their sexual relations were limited because Romer experiences so much pain. The jury found for the Romers. It awarded Charles Romer $21,500 for his medical expenses, pain and suffering, and lost wages, and awarded his wife $5,000 for loss of consortium.

I

■ Appellant contends that the trial court erred in denying the motion for a new trial on the ground that the verdict was grossly insubstantial.[3] In reviewing the denial of a motion for a new trial based on a claimed inadequate verdict, this court will reverse only when the amount of the award evidences prejudice, passion or partiality on the part of the jury or where the verdict appears to be an oversight, mistake, or consideration of an improper element. *Hughes v. Pender,* D.C.App., 391 A.2d 259, 263 (1978). An appellate court should order a new trial only when the award is contrary to all reason. *Taylor v. Washington Terminal Co.,* 133 U.S.App.D.C. 110, 113, 409 F.2d 145, 148, *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969); *Hughes v. Pender, supra* at 263.

■ In this case, it was within the province of the jury to award a modest amount for appellant's pain and suffering. The jury could have determined that many of Romer's medical problems stemmed from injuries sustained before the November 1974 fall. Dr. Marcolin testified that nine days before the fall, Romer was 35% disabled in his back and 15% disabled in his neck. Dr. Schuster stated that in June of 1979, Romer had a 50% permanent disability related to his spinal problem. From this testimony, the jury may have concluded that appellant had suffered only a 15% loss of bodily motion as a result of the instant fall. It could also have considered the evidence that Romer failed to follow the recommendations of his doctors to perform only light duty, to lose weight, and to participate in psychological behavioral therapy. Likewise, the jury was justified in awarding a small amount for lost wages considering Dr. Ammerman's testimony that appellant's employment prognosis as a pipe fitter was not promising but that he could become fully employed. Moreover, the award to Romer was several thousand dollars more than his out of pocket medical expenses. We conclude, therefore, that although insubstantial, the verdict was not so grossly inadequate as to mandate reversal of the

---

**3.** In denying the motion, the court wrote: "While the court was surprised by the niggardly verdict and no doubt would have rendered a very substantial judgment on a bench trial, it cannot conclude that the verdict was beyond any rational approach to the case."

trial court's denial of the motion for new trial.

## II

 In assessing appellant's assertion that the court erred in instructing the jury not to award damages for future medical expenses, we note that an appellate court must weigh the persuasive character of the evidence in determining whether to allow a claim. *Palmer v. Connecticut Railway & Lighting Co.,* 311 U.S. 544, 558, 61 S.Ct. 379, 383, 85 L.Ed. 336 (1941). Damages may not be based on mere speculation or guesswork. *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931); *Palmer v. Connecticut Railway & Lighting Co., supra,* 311 U.S. at 558–59, 61 S.Ct. at 383–384; *Edmund J. Flynn Co. v. LaVay,* D.C.App., 431 A.2d 543, 550 (1981). The evidence offered must form an adequate basis for a reasoned judgment, *Palmer v. Connecticut Railway & Lighting Co., supra,* 311 U.S. at 558, 61 S.Ct. at 283; but "[j]uries are allowed to act upon probable and inferential, as well as direct and positive proof." *Story Parchment Co. v. Paterson Parchment Paper Co., supra,* 282 U.S. at 564, 51 S.Ct. at 251; *Edmund J. Flynn Co. v. LaVay, supra* at 550. While damages are not required to be proven with mathematical certainty, there must be some reasonable basis on which to estimate damages. *Designers of Georgetown, Inc. v. E. C. Keys & Sons,* D.C.App., 436 A.2d 1280, 1281 (1981); *District Concrete Co. v. Bernstein Concrete Corp.,* D.C.App., 418 A.2d 1030, 1038 (1980).

 In this case, several physicians testified about the treatment Romer should undergo in the future. It was suggested that he have transcutaneous nerve stimulation (TNS), repeated injections into the epidural space, and psychological behavioral counsel-

ing (pain clinic), with a continuing rehabilitative program. Surgery was not recommended. No evidence was introduced as to the duration of the suggested treatments, however, and although bills were submitted on the cost of Romer's previous injections and TNS treatment, there was no evidence on the past or future estimated cost of psychological counseling. Counsel recognized this lack of evidence in his closing argument when he told the jurors that they would have to figure the estimated cost of future medical expenses on their own. Accordingly, as there was no basis upon which the jury could have reasonably calculated or inferred the cost of Romer's future medical expenses, if any, the court correctly refused to allow the jury to speculate in this area of damages.[4]

## III

 Finally, it is argued that the court erred in setting aside the award to June Romer for loss of consortium because she failed to give the city government adequate notice of her claim pursuant to D.C.Code 1981, § 12–309, which provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Commissioner [Mayor] of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

Notice was sent to the Mayor of the District of Columbia stating that appellant had a claim arising out of injuries he sustained while working on a job site for the John C. Grimberg Co. on November 12, 1974.[5] Following *Boone v. District of Columbia,* 294 F.Supp. 1156 (D.D.C.1968),[6] the court vacat-

---

4. We note that since Romer refused earlier recommendations of his physicians, he might also refuse to undergo future treatments.

5. This notice is conceded to be adequate under the statute.

6. In *Boone, supra,* the United States District Court for the District of Columbia interpreted § 12–309 and held that a spouse must notify the District of a claim of loss of consortium. We have often cited *Boone* with approval; *e.g., Braxton v. National Capital Housing Authority,* D.C.App., 396 A.2d 215 (1978); *Pitts v. District of Columbia,* D.C.App., 391 A.2d 803 (1978);

ed the award to Mrs. Romer because neither she, her agent, nor her attorney had notified the Mayor that she was asserting a claim of loss of consortium based on her husband's injuries.

Under § 12–309, potential claimants are required to provide an early warning to District officials regarding litigation likely to occur in the future. *See Pitts v. District of Columbia,* D.C.App., 391 A.2d 803 (1978). This requirement was intended by Congress to ensure that District officials would be given prompt notice of claims for potentially large sums of money so that they could: quickly investigate before evidence became lost or witnesses unavailable; correct hazardous or potentially hazardous conditions; and settle meritorious claims. *See Washington v. District of Columbia,* D.C.App., 429 A.2d 1362 (1981) (en banc); *Breen v. District of Columbia,* D.C.App., 400 A.2d 1058 (1979); *Shehyn v. District of Columbia,* D.C.App., 392 A.2d 1008 (1978); H.R. Rep.No. 2010, 72 Cong., 2d Sess. 2 (1933). Consequently, this section gives the District a "litigative advantage over an ordinary civil defendant who may learn of claims against him for unliquidated damages at any time within the longer statute of limitations period." *Pitts v. District of Columbia, supra* at 807 (citation omitted). [*Gwinn v. District of Columbia,* D.C.App., 434 A.2d 1376, 1378 (1981).]

The notice statute is to be construed strictly because it is in derogation of the common law, *id.;* thus "precise exactness" is not absolutely essential with respect to the details of the statement giving notice. *Washington v. District of Columbia, supra* at 1365; *Braxton v. National Capital Housing Authority,* D.C.App., 396 A.2d 215, 217 (1978); *Pitts v. District of Columbia, supra* at 807. For example, a police report may substitute for formal notice under the statute when it gives at least the same degree of specificity required of a written notice. *Id.* at 808.

*Miller v. Spencer,* D.C.App., 330 A.2d 250 (1974), but have not cited the case squarely for

■ Claims for loss of consortium are collateral to a spouse's claim for injuries; the two claims are tied together and the one (consortium) is dependent on the other (injuries). As long as the injured spouse's notice provides the District with sufficient information to allow it to investigate the accident, to try to settle claims, and to prevent future accidents, formal notice of a claim for loss of consortium will provide the city with no additional information necessary to effectuate the purposes of the statute. The District is not prejudiced by not receiving notice of a spouse's claim for loss of consortium. A cursory investigation would reveal the nature of the claimant's injuries and his or her marital status. Accordingly, we decline to follow *Boone v. District of Columbia, supra,* and hold that a spouse need not specifically assert a claim for loss of consortium when the injured spouse duly notifies the Mayor of the District of his or her claim and the details of the accident pursuant to D.C.Code 1981, § 12–309. *Cf. City of Houston v. Glover,* 355 S.W.2d 757 (Tex.Civ.App.1962) (notice to the city that the deceased was driving his automobile, crashed into a tree and died eleven days later is sufficient to apprise the City of a claim for pain and suffering sustained by the deceased before his death); *Ficara v. City of New York,* 17 Misc.2d 752, 186 N.Y.S.2d 361 (1959) (where notice of wife's claim is signed by husband, and his name is in the title of the claim, leave is granted to amend the notice of claim against the City of New York to state that the husband's claim is for loss of his wife's services and consortium and for medical expenses). *See Dellums v. Powell,* 184 U.S. App.D.C. 324, 566 F.2d 216 (1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) (notice is sufficient under D.C. Code 1973, § 12–309 although it names some but not all claimants in a class action suit for false arrest).

■ In this case, the notice to the District provided all the details of the "time,

its holding.

place, cause, and circumstances" of Romer's accident. The District had adequate notice to permit it to investigate the circumstances surrounding his claim. A cursory investigation would have revealed, and did reveal, that Romer suffered painful injuries to his back and that he is married. Accordingly, under our holding today, Mrs. Romer's claim for loss of consortium is not barred for lack of adequate notice to the District.

*Affirmed in part and reversed in part.*

PRYOR, Associate Judge, dissenting:

I would affirm the trial court's ruling with respect to the claim for loss of consortium. The notice requirement of D.C.Code 1981, § 12–309 could be viewed, as the majority holds, as being satisfied by timely written notice of the alleged primary tort. However, a loss of consortium is a related but separate cause of action. Given the unambiguous language of the statute, I do not think we are free to interpret it broadly and thereby alter its meaning. Rather, I believe that *Boone v. District of Columbia,* 294 F.Supp. 1156 (D.D.C.1968), which we have cited in the past, correctly analyzes the problem.

I agree with the majority's opinion in all other respects.