**Catherine HARDY, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 91–CV–960.**

District of Columbia Court of Appeals.

Argued Oct. 13, 1992.
Decided Nov. 10, 1992.

Paul V. Butler, with whom Patrick J. Christmas, Washington, D.C., was on the brief, for appellant.

Phillip A. Lattimore III, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Sidney R. Bixler, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, SULLIVAN, Associate Judge, and NEWMAN, Senior Judge.

ROGERS, Chief Judge:

Appellant Catherine Hardy appeals from the grant of summary judgment to appellee District of Columbia and dismissal of her case on the ground that the trial judge erred in ruling that her letter of notice to the Mayor under D.C.Code § 12–309 (1989 Repl.) failed to provide sufficient information regarding the location of the accident. We reverse.

I

Appellant Catherine Hardy, through counsel, sent the Mayor of the District of Columbia a letter pursuant to D.C.Code § 12–309 [1] that stated in pertinent part:

> At approximately 9:30 p.m. on Saturday, August 29, 1987, Ms. Hardy was proceeding on foot on the side walk [sic] in close proximity to 1814 Q Street, S.E. As she stepped onto a water meter cover in the sidewalk, the cover "flipped," causing Ms. Hardy to fall, thereby sustaining injuries to her head and the right side of her body.

Thereafter Ms. Hardy filed a complaint alleging negligence by the District of Columbia and seeking compensatory damages,

---

1. D.C.Code § 12–309 provides in relevant part: An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

costs and interest. The District filed a motion to dismiss the complaint, or in the alternative for summary judgment, on the ground that the letter did not sufficiently describe the place and circumstances of Ms. Hardy's injury as required by § 12–309. The trial judge initially denied the motion for summary judgment without prejudice. On the first day of trial, however, after determining that the meter cover on which Ms. Hardy tripped was located between 1806 and 1804 Q Street, S.E., the judge reconsidered his ruling and granted the District's motion for summary judgment on the ground that Ms. Hardy had failed to comply with § 12–309 because her letter had not adequately specified the place of her injury, and dismissed the case.

## II

On appeal Ms. Hardy contends that the trial judge erred because the information provided in her letter was sufficient to allow the District to conduct a reasonable investigation that could have identified the correct meter cover, and the judge's view that greater specificity was required is contrary to § 12–309 and the decisions of this court. The District responds that Ms. Hardy's "notice was inaccurate and affirmatively misleading," and that until her deposition was taken more than three years later, "the District could reasonably believe it [the offending meter cover] was the cover at 1814 Q Street, S.E., or perhaps the one next to it at 1810 Q Street, S.E."

■ The requirement under § 12–309 that a letter be sent to the Mayor of the District of Columbia is mandatory as a prerequisite to filing suit against the District. *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C.1978) (citation omitted). Being in derogation of the common law, the statute is strictly construed. *Romer v. District of Columbia*, 449 A.2d 1097, 1101 (D.C.1982). However, the letter's required contents, such as "approximate ... place" of injury, are to be interpreted liberally. *Washington v. District of Columbia*, 429 A.2d 1362, 1365 n. 9 (D.C.1981) (en banc) (citation omitted).

■ Generally stated, the purposes of § 12–309 are (1) to allow the District to investigate potential claims so that evidence may be gathered while still available, for example before the relevant sidewalk is paved over or the meter cover fixed, (2) to enable the District to correct defective conditions, thus increasing public safety, and (3) to facilitate settlement of meritorious claims and resistance of frivolous ones. *See Pitts, supra,* 391 A.2d at 807 & n. 4 (citations omitted); *Gaskins v. District of Columbia,* 579 A.2d 719, 721 (D.C.1990) (citations omitted); *Shehyn v. District of Columbia,* 392 A.2d 1008, 1013 (D.C.1978) (citing H.R.Rep. No. 21010, 72d Cong., 2d Sess. 1–2 (1933)). A letter notifying the Mayor under § 12–309 must provide enough information that the District "in the exercise of due diligence, should have been able to locate the offending defect." *Dixon v. District of Columbia,* 168 A.2d 905, 907 (D.C.1961). *See also Hurd v. District of Columbia,* 106 A.2d 702, 704 (D.C. 1954) ("claimant ... should describe the situs of the injury in such a manner as to reasonably enable the investigating agency to find it"); *Gaskins, supra,* 579 A.2d at 721 ("[n]otice under the statute need only 'furnish[ ] a reasonable guide for inspection,' ... and 'provide an early warning to [the] District ... regarding litigation likely to occur in the future' ") (citations omitted); *Dixon, supra,* 168 A.2d at 907 ("a reasonable guide for inspection," also citing *Stone, infra,* and *Hurd, supra,* with approval); *Stone v. District of Columbia,* 99 U.S.App.D.C. 32, 34, 237 F.2d 28, 30 (1956) (en banc) (notice need only "pin-point [ ] the locale with sufficient accuracy so that an investigation starting from the notice could reasonably be expected to uncover the available information"). Thus, the notice must be sufficient to enable the District to begin an investigation, which may later require further information from the potential plaintiff or the plaintiff's attorney.[2]

---

**2.** *See Gaskins, supra,* 579 A.2d at 723 ("the duty of proper notice may include an obligation to cooperate with reasonable requests for supplemental information").

The en banc court explained in *Washington, supra,* that:

> the purpose of § 12–309 is not to help the District to evaluate known claims by requiring notice complete enough to state a formal cause of action. The statute, rather, "was designed 'to protect the District of Columbia against unreasonable claims,' and 'to give the District officials reasonable notice of the accident so that the facts may be ascertained and, if possible, the claim adjusted.'" *Hurd, supra* at 704 (footnote omitted) (quoting legislative history). *Accord, Pitts, supra* at 807; *Stone, supra* [99 U.S.App. D.C.] at 33, 237 F.2d at 29. Put another way, § 12–309 was intended solely to assure the District opportunity for timely access to all relevant facts about a potential claim, in order to protect the District against an unfair advantage by the eventual claimant.

429 A.2d at 1368.

■ Ms. Hardy's § 12–309 letter identified the location of the water meter cover within 75 feet or less of its actual location, indicated the correct block and side of the street, and referenced "close proximity" to an existing street address. This description was more precise and accurate than the locations given in other notice letters that have been found sufficient under § 12–309. *See Gaskins, supra,* 579 A.2d at 721–22 (sufficient notice where letter specified location of fall as somewhere on a 150–foot stretch of sidewalk); *Dixon, supra,* 168 A.2d at 906 (notice letter stated that fall occurred on sidewalk instead of correctly indicating gutter); *Washington, supra,* 429 A.2d at 1365 & n. 8 (sufficient notice to state that fall occurred in single-family residence, without specifying where in the home the injury occurred); *Stone, supra,* 99 U.S.App.D.C. at 34, 36, 237 F.2d at 30, 32 (sufficient notice to indicate the wrong corner of a six-corner intersection as the site of plaintiff's tripping on a manhole), *cert. denied* 352 U.S. 934, 77 S.Ct. 221, 1 L.Ed.2d 160 (1956). *Compare Hurd,*

*supra,* 106 A.2d at 703–04 (notice giving non-existent street address would not have sufficed if not cured by later correction).

Nor did Ms. Hardy's letter contain any actual misstatement. Her letter described the water meter cover as being "in close proximity" to 1814, rather than stating that it was directly in front of that address. *Compare Winters v. District of Columbia,* 595 A.2d 960, 960–61 (D.C.1991) (insufficient notice where letter said plaintiff was injured at D.C. Jail in Lorton, Virginia, but D.C. Jail is located in the District of Columbia and the injury occurred at Lorton Reformatory in Lorton, Virginia); *Hurd, supra,* 106 A.2d at 704 (notice letter giving non-existent street address was insufficient notice, but defect was cured by second notice letter). *See also Toomey v. District of Columbia,* 315 A.2d 565, 566 (D.C.1974).

This court has made clear that "'precise exactness' is not absolutely essential with respect to the details of the statement giving notice." *Romer, supra,* 449 A.2d at 1101 (loss of consortium claim by plaintiff's spouse not required to be included in letter because investigation by District could disclose plaintiff's marital status and thus infer possible claim) (citations omitted). *See also Gaskins, supra,* 579 A.2d at 721 (citation omitted); *Washington, supra,* 429 A.2d at 1365 (citations omitted); *Hurd, supra,* 106 A.2d at 705 (citation omitted). Since Ms. Hardy's letter would in all likelihood have been deemed sufficient notice of the place of her injury under § 12–309 had it indicated only the 1800 block of Q Street, S.E.,[3] it necessarily follows that additional, nonmisleading but less than helpful specificity, such as "in close proximity to 1814," does not make the notice insufficient under § 12–309. *See Dixon, supra,* 168 A.2d at 907 ("additional specificity—though erroneous—should not defeat the notice," where plaintiff indicated wrong corner of intersection) (quoting *Stone, supra,* 99 U.S.App. D.C. at 34, 237 F.2d at 30). It is obviously in the District's interest, consistent with

---

**3.** *See Stone, supra,* 99 U.S.App.D.C. at 34, 237 F.2d at 30 (identifying the intersection, without specifying the particular corner, would have been sufficient notice under D.C.Code § 12–208 (1951), which was almost identical to the current D.C.Code § 12–309 (1989 Repl.) (*see id.* 237 F.2d at 29 n. 1)); *Gaskins, supra,* 579 A.2d at 722–23 (citing *Stone* with approval).

the purposes of § 12–309, not to discourage potential claimants from attempting, even inefficiently, to provide additional helpful information to aid its investigation.

Even though there were at least three meter covers on the 1800 block of Q Street, S.E.,[4] there were not so many possibilities or such a large search area that the District could not investigate Ms. Hardy's claims. In fact, the meter cover in front of 1806 Q Street, S.E., which the trial judge identified as being the meter on which Ms. Hardy tripped, was only seventy-five feet or less away from 1814 Q Street, S.E. It also appears to have been the only cover on the block which actually had "water meter" stamped on its lid as well as the only meter cover that was almost touching (or actually touching) the sidewalk.[5] Ms. Hardy's meter cover was the only water meter cover with all of these characteristics. As in *Gaskins, supra:*

> [a]ssuming there were multiple broken or eroded sections along the 150–foot stretch of sidewalk, .... [e]quipped with the notice ... an investigator could assess the condition of the sidewalk generally and identify those defects most capable of causing a trip and fall, and so arrive at a reasoned estimate of the District's liability. We think more is not required, otherwise § 12–309, a provision for 'early warning ... regarding litigation likely to occur in the future,' ... would be a substitute for the precision properly expected in discovery after a lawsuit is filed....

579 A.2d at 722 (citation omitted).

Ms. Hardy's letter, therefore, gave the District a basis for beginning an investigation by inspecting the site and questioning

Ms. Hardy about the particulars of her alleged accident. The letter did not indicate a location that the District would have been completely unable to find. Based on this court's interpretations of the statute, asking the District to examine the meter covers on one side of the street in a single block is not so excessive or unreasonable as to defeat the sufficiency of the § 12–309 notice letter. If the District determined that it required a more precise definition of exactly where on the block Ms. Hardy alleged that she had tripped, it could have asked her for additional information.[6] *See supra* notes 2, 5. While one purpose of § 12–309 is to enable the District to investigate future claims, a notice is not insufficient because the District does not undertake a full investigation immediately. If the District chooses not to continue with its investigation beyond a preliminary site visit, and waits until suit is filed to question the plaintiff further, that does not defeat the adequacy of the notice.

The District argues, nonetheless, that the notice letter, complaint, hospital records and Ms. Hardy's testimony "are all different," without specifying any particular conflicts. It also points to three discrepancies between the notice letter and the complaint, but refers specifically only to the fact that the letter said the meter cover was "in the sidewalk" and the complaint said "adjacent to the sidewalk." These differences are irrelevant because only the letter is to be considered by the court in determining the sufficiency of the notice under § 12–309. *See Washington, supra,* 429 A.2d at 1367; *Gaskins, supra,* 579 A.2d at 723; *Dixon, supra,* 168 A.2d at 907. In any event, "in" and "adjacent to"

---

**4.** There were the meter covers in front of 1814 and 1810, and the correct cover near 1806. Appellant's counsel stated before the trial court that there were three covers, including the one on which Hardy fell, within forty yards of each other on the 1800 block of Q Street.

**5.** According to the District's memorandum in support of its motion for dismissal or summary judgment, the meter cover on which Ms. Hardy allegedly tripped and a sewer cover seem to have been the only large, one-piece covers in close proximity to the sidewalk on that block. In her deposition, which was before the trial

judge, Ms. Hardy described, according to the District's memorandum, the size of the meter cover, stated that it was a one-part cover (unlike the two-part cover in one of the photographs she was shown), and rejected two of the meter covers depicted in the photographs—the covers near 1810 and 1814 Q Street.

**6.** The District's investigator located the correct meter cover "[i]n revisiting the area with [Ms. Hardy's] deposition testimony in hand," according to the District's memorandum in support of its motion for dismissal or summary judgment.

the sidewalk are not very different descriptions. *Cf. Dixon, supra,* 168 A.2d at 906–07 (sufficient notice which wrongly specified sidewalk instead of gutter). In fact, the relevant meter cover was almost touching, or did touch, the sidewalk, and was the only meter cover so positioned.[7] Furthermore, the claim that the District is not the only entity that maintains meter covers in the District of Columbia may be a matter for the District to pursue at trial, but it is irrelevant to the sufficiency of Ms. Hardy's letter to the Mayor. Similarly, any possibility that Ms. Hardy may be unable to mount a strong case at trial is irrelevant to determining the adequacy of her § 12–309 notice.

Accordingly, because Ms. Hardy's letter described the location of her injury with sufficient precision to enable the District to commence its investigation upon learning of the location, within 75 feet of accuracy, of the water meter cover "in close proximity to 1814 Q Street, S.E.," we reverse the judgment and remand the case to the trial court for further proceedings.

---

7. There was, however, a sewer cover further down the block, near 1828 Q Street, S.E., which was in the sidewalk.