John BARNHARDT, Appellant,

v.

DISTRICT OF COLUMBIA,
et al., Appellees.

No. 10–SP–178.

District of Columbia Court of Appeals.

Argued Sept. 29, 2010.
Decided Nov. 18, 2010.

Paul D. Hunt, Washington, DC, for appellant. John Barnhardt filed a brief pro se.

Richard S. Love, Senior Assistant Attorney General for the District of Columbia, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General were on the brief, for appellee.

Before RUIZ, FISHER and OBERLY, Associate Judges.

RUIZ, Associate Judge:

We have been asked to answer a question of District of Columbia law certified to this court from the United States Court of Appeals for the District of Columbia Circuit pursuant to D.C.Code § 11–723 (2001). At issue is whether D.C.Code § 12–309 (2001) operates to bar potential tort claims by appellant, John Barnhardt, against the District of Columbia for destruction of his property. The United States Court of Appeals framed the certified question as follows:

> Does D.C.Code § 12–309 bar Barnhardt's tort claims due to the fact that he did not provide notice to the Mayor of the District of Columbia within six months after the destruction of his property, even if, as he alleges, he was not aware that his property had been destroyed or that it had been in the custody of the Metropolitan Police Department until over six months after its destruction?

For the reasons that follow, we answer the question in the negative and hold that D.C.Code § 12–309 minimally requires, as a necessary factual precondition to barring a claim, that the claimant know or have reason to know that he has sustained injury or damage.

## I. PROCEDURAL HISTORY

John Barnhardt filed suit in the United States District Court for the District of Columbia against the District of Columbia, the Mayor of the District of the Columbia, the Chief of the Metropolitan Police Department, an unnamed property clerk of the Metropolitan Police Department, the Washington Metropolitan Area Transit

Authority (WMATA), the Metro Transit Police Department, the Chief of the Metro Transit Police Department, and two Metro Transit Police officers. The complaint included a claim under 42 U.S.C. § 1983 for the destruction of Barnhardt's property without due process in violation of the Fifth and Fourteenth Amendments, as well as tort claims for intentional infliction of emotional distress, negligence, and conversion. After a number of dismissals, many by concession of the plaintiff, the only claims remaining before the District Court were a claim against the District of Columbia for the destruction of Barnhardt's property in violation of the Due Process Clause of the Fifth Amendment and tort claims against the District of Columbia for negligence and conversion.

The District Court dismissed the due process claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court granted summary judgment to the District on the tort claims, based on the trial court's interpretation of D.C.Code § 12–309 as requiring notice by the claimant within six months of the date his property was destroyed. On appeal of the dismissal of appellant's claims, the United States Court of Appeals for the District of Columbia Circuit concluded that the law was unclear as to whether § 12–309 would operate to bar the tort claims against the District of Columbia if, as appellant claimed, he had no knowledge of the injury within the six-month period following the destruction of his property. It therefore certified that question to this court.

## II. THE FACTS

Barnhardt's complaint alleged that Barnhardt was arrested on May 5, 2005,

by Metro Transit police officers. In the course of the arrest, certain items belonging to Barnhardt were confiscated, including: (i) several bundles of U.S. currency, (ii) two cellular phones, (iii) two money orders, (iv) various personal papers and effects, and (v) jewelry, consisting of two gold diamond rings (valued by Barnhardt at $15,000) and a gold and diamond chain (valued by Barnhardt at $5,000). Barnhardt was taken to the central cellblock in the Superior Court of the District of Columbia where he was processed and then released. Immediately upon release, Barnhardt visited the Metro Transit Police Department to seek the return of his personal property. He was told that his property could not be returned because it "may be used as evidence in the criminal case pending before the Grand Jury."

The criminal case against Barnhardt concluded two years later, in 2007, and Barnhardt renewed his requests for the return of his property.[1] He filed a motion in the Superior Court requesting that the property be returned to him, which was granted on September 10, 2007. On September 20, 2007, with the judge's order in hand, Barnhardt returned to the Metro Transit Police Property Office. Most of his items were then returned by WMATA, but the agent at the Property Office told Barnhardt that his jewelry, money orders, and several other items could not be located. Barnhardt made a further motion in the Superior Court seeking to compel the return of his missing items. In response, in a filing made on October 4, 2007, WMATA informed the Superior Court that the missing items had been transferred to the custody of the Sixth District of the Metro-

---

1. According to Barnhardt's filing in Superior Court requesting the return of his property, there were no charges filed against him related to the property seized from him, only for

"fleeing and eluding" the police, apparently as a result of a high speed chase after Barnhardt's vehicle backed into a police cruiser.

politan Police Department, where they had been destroyed on May 4, 2006.

On or about March 17, 2008, Barnhardt sent notice to the Office of the Mayor of his intent to file a lawsuit for damages against the District of Columbia. The Office of the Mayor received the notice on March 25, 2008. Barnhardt's complaint was filed in the U.S. District Court for the District of Columbia on July 31, 2008. At issue in the question certified to this court is the viability of Barnhardt's common law tort claims for negligence and conversion against the District of Columbia.

With respect to these tort claims, the District Court concluded that Barnhardt had "sustained injury" for purposes of D.C.Code § 12–309 on May 4, 2006, the date on which his property was destroyed by the Metropolitan Police Department. Because the notice sent by Barnhardt had not been received by the Office of the Mayor until March 25, 2008, nearly two years later, his tort claims were barred by the six-month notice requirement imposed by D.C.Code § 12–309. Barnhardt appealed, and the federal appellate court certified the question to us on February 22, 2010.

In response to this court's order of February 24, 2010, directing the parties to file statements pursuant to Rule 22(a)(2),[2] Barnhardt submitted "additional papers and information" for the court's consideration.[3] The District of Columbia responded that the existing record was adequate but did not object to Barnhardt's submis-

sion. Both parties relied on the briefs filed in the federal appellate court.

## III. SECTION 12–309

■ D.C.Code § 12–309 provides that:

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, *within six months after the injury or damage was sustained,* the claimant, his agent, or attorney *has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.*

D.C.Code § 12–309 (emphasis added). We have made it clear that "[s]ection 12–309 is not, and does not function as, a statute of limitations. Rather, it imposes a notice requirement on everyone with a tort claim against the District of Columbia, and compliance with its terms is 'mandatory as a prerequisite to filing suit against the District.'" *District of Columbia v. Dunmore,* 662 A.2d 1356, 1359 (D.C.1995) (citing *Hardy v. District of Columbia,* 616 A.2d 338, 340 (D.C.1992)). As our prior decisions have emphasized, "section 12–309 is to be construed narrowly against claimants." *Id.* (citing *Hardy,* 616 A.2d at 340; *Romer v. District of Columbia,* 449 A.2d 1097, 1101 (D.C.1982); *Gwinn v. District of Columbia,* 434 A.2d 1376, 1378 (D.C. 1981)).

We have considered a number of appeals in which claimants have sought to avoid

---

**2.** *See* D.C.App. R. 22(a)(2) ("Within 30 days of the date of the certification order, counsel must file statements (joint or separate) indicating whether the certification and accompanying papers are adequate to enable the court to decide the certified question. The court may direct the parties to supplement the certified record as necessary.").

**3.** These documents included six letters from appellant or his counsel to the Office of the District of Columbia Corporation Counsel (*i.e.,* the D.C. Attorney General), the U.S. Attorney's Office, and the Metro Transit Police Department seeking the return of appellant's property. The letters are dated from April 27, 2006, to March 7, 2007. Three of the letters indicate that they were copied to the Mayor.

the harsh results that can result from a strict application of the six-month deadline for filing notice. We have previously held that the doctrine of equitable tolling does not apply to § 12–309. *See Gross v. District of Columbia*, 734 A.2d 1077, 1081 (D.C.1999) (claimant *non compos mentis* ); *Doe by Fein v. District of Columbia*, 697 A.2d 23, 30 (D.C.1997) (claimant a minor at time of injury); *Gwinn*, 434 A.2d at 1378–79 (same); *Hill v. District of Columbia*, 345 A.2d 867, 869 (D.C.1975) (claimant incapacitated for five months after injury). We have also held that the "discovery rule" applicable in the statute of limitations context does not equally apply to § 12–309. *See Dunmore*, 662 A.2d at 1359. The justifications for both lines of decisions are similar, based on Congress's goals when it passed the predecessor to § 12–309:

> The rationale underlying the Section 309 notice requirement is (1) to protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted.

*Id.* (citing *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C.1978)). Permitting potential claimants to avoid the notice requirement of § 12–309 by application of either equitable tolling or the discovery rule, " 'would totally frustrate the legislative intent' " of § 12–309 and prejudice the District of Columbia in its defense of these claims. *Id.* at 1360 (quoting *Gwinn*, 434 A.2d at 1378). "In light of statutory language, express congressional intent and the strict interpretation attendant to statutes in derogation of the common law," *Gwinn*, 434 A.2d at 1378, this court is not at liberty to fashion exceptions to the operation of § 12–309. Rather, "any potential remedy rests in the hands of the legislature." *Id.* at 1379.

However, as noted by the United States Court of Appeals in its certification to this court, we have suggested that § 12–309 might not bar a claim when the plaintiff "was unaware that he or she had an injury and, as a consequence, had unknowingly allowed the six-month period to elapse." *Dunmore*, 662 A.2d at 1360 n. 13. In *Burns v. Bell*, 409 A.2d 614 (D.C.1979), we applied the discovery rule to the statute of limitations for claims of medical malpractice against private defendants. *See Burns*, 409 A.2d at 614. In *Dunmore* we were asked, in the context of a medical malpractice claim against the District of Columbia, to extend our holding in *Burns* and apply the discovery rule to the notice requirement of § 12–309 as well. 662 A.2d at 1359–60. We declined to do so. But we did suggest that, were we ever presented with a plaintiff who had been unaware that she had even been injured at all, "it would be far less ambitious to read 'injury' in § 12–309 as denoting an injury of which one is aware, rather than as meaning 'actionable injury' so as to incorporate the discovery rule *in toto*." *Id.* at 1360 n. 13.

In *District of Columbia v. Ross*, 697 A.2d 14 (D.C.1997), we clarified the narrowness of this potential interpretation of § 12–309's statutory language. *Ross* presented the case of an infant girl who had swallowed lead paint chips in a D.C. housing project; the ingestion resulted in hospitalization for lead poisoning. *Id.* at 16. At the time of the treatment for lead poisoning, a physician warned the mother that her daughter would need to be tested in the years ahead for a potentially serious neuropsychological condition that can result from lead poisoning. *Id.* at 16 n. 1. Because of the daughter's young age, it was not then possible to diagnose any such injury. *Id.* at 16. When the daughter was tested for neuropsychological damage three years later, it was determined that

she had indeed developed a serious condition as a result of the lead poisoning. *Id.* It was only then that the mother sent notice to the District and filed a lawsuit. *Id.* The trial court had considered the case " 'to be the precise fact pattern described in the *Dunmore* footnote,' " reasoning that the neuropsychological injury could not have been discovered until the daughter underwent neuropsychological testing, more than six months after the injury had been sustained. *Id.* Concluding that this court would not permit § 12–309 to bar a claim under the circumstances described in *Dunmore,* the trial court denied a motion by the government to dismiss the claim under § 12–309. *Id.*

On appeal we reversed. We explained that the circumstances envisioned by our footnote in *Dunmore* call for a *"total* lack of awareness" of injury. *Id.* at 18 (emphasis added). It was not the case that the mother in *Ross* had had a total lack of awareness of her daughter's injuries—it was known that the child had ingested lead chips, had been hospitalized, and had clearly sustained an injury of some kind, even though it was unknown whether she had suffered a neuropsychological injury. This was instead a case of a "[l]ack of full awareness of the seriousness of injury," distinguishable from the scenario we anticipated in *Dunmore,* and under which failure to give timely notice would not be excused. *Id.* at 19. The six-month clock began to run when "the harmful material entered [the daughter's] body, was discovered, and resulted in significant medical procedures," and the notice provision of § 12–309 therefore barred the mother's claim. *Id.* at 18–19.

■ In *Brown v. District of Columbia,* 853 A.2d 733 (D.C.2004), we faced a set of facts that, while not calling for us to revisit the issue identified in the *Dunmore* footnote, were close enough for Judge Glickman to clarify in a concurrence those issues that we had yet to address. He explained:

[T]his appeal does not raise, and the opinion does not answer, two important open questions: (1) whether D.C.Code § 12–309 bars a claimant from suing the District of Columbia where the claimant did not give notice in the six-month period required by the statute because the claimant was justifiably unaware during that period that he or she had sustained any injury at all, and (2) whether the District of Columbia may be barred from invoking § 12–309 to forestall a lawsuit where the claimant did not furnish the requisite timely notice because of concealment, misrepresentation, or other wrongful conduct on the part of the District's agents.[4] I suspect that eventually this court will be presented with a case that raises one or the other of these questions.

*Id.* at 740–41 (Glickman, J., concurring). Our holding today answers the first of these two open questions: D.C.Code § 12–309 does not bar a claim if the claimant did not give timely notice because the claimant was justifiably, and completely, unaware that he or she had sustained any injury at all.[5] Consistent with our reservation in

---

4. *See Gwinn,* 434 A.2d at 1379 n. 4 (leaving "unanswered the question whether the statutory period of § 12–309 is tolled for a claimant when the fault of the government makes timely compliance unreasonable or impossible") (citing *Hill,* 345 A.2d at 869 n. 3).

5. The record we have is devoid of facts that would allow us to venture whether the second "open question" noted in the *Brown* concurrence, related to wrongdoing or concealment by District officials, is presented by this case. We note, however, that it seems odd in the extreme that valuables such as currency and jewelry would be "destroyed" without explanation.

*Dunmore*, we read "injury," as it is used in § 12–309, to mean "injury of which one is aware." *Dunmore*, 662 A.2d at 1360 n. 13.

■ To be clear, we do not retreat from our prior decisions holding that the discovery rule applicable in the statute of limitations context is inapplicable to § 12–309. In the limitations context, where the question is when the claim "accrued," the discovery rule requires that the plaintiff know, or be charged with knowledge, of "(1) an injury; (2) its cause in fact; and (3) some evidence of wrongdoing." *Diamond v. Davis*, 680 A.2d 364, 379 (D.C.1996) (Ruiz, J., concurring in part and dissenting in part) (citing *Bussineau v. President & Dir. of Georgetown College*, 518 A.2d 423, 425 (D.C.1986)). The language of § 12–309, however, requires notice within six months of when the "injury or damage was sustained." The statute does not use the word "accrue," and this difference is significant. As we have noted, because notice under § 12–309 is a condition precedent to filing suit, no right of action can be brought unless notice is given. *See Gwinn*, 434 A.2d at 1378. Therefore, we interpret § 12–309's six-month period as being triggered upon the claimant's knowledge of the injury or damage itself, not its legal cause or consequence. Importantly, as we clarified in *Ross*, implicit in this holding is that the six-month bar will operate unless the plaintiff had a "total lack of awareness" of the injury or damage; lack of awareness of the seriousness of the injury, or of all components of the injury, will not suffice. *Ross*, 697 A.2d at 19.

■ We emphasize that our interpretation of § 12–309 as requiring a threshold knowledge of injury brings with it concomitant obligations upon the potential claimant. As we have said in connection with the discovery rule, "[i]n every case, the plaintiff has a duty to investigate matters affecting her affairs with reasonable diligence under all of the circumstances." *Diamond*, 680 A.2d at 381. We therefore identify two types of notice that will constitute knowledge that injury has been sustained: "actual notice," which "is that notice which a plaintiff actually possesses"; and "inquiry notice," which "is that notice which a plaintiff would have possessed after due investigation." *Id.* at 372. Thus, "[o]nce the plaintiff actually knows, *or with the exercise of reasonable diligence would have known*," that she has sustained an injury, *id.* at 381 (emphasis added), notice must be given to the Mayor within the prescribed six-month period.

■ Our reading of § 12–309 in this manner preserves the provision's internal coherence and gives meaning to all its terms. *See Thompson v. District of Columbia*, 863 A.2d 814, 818 (D.C.2004) (noting that statute should be interpreted so that language used in statute is not superfluous). Section 12–309 requires a claimant to give "notice in writing to the Mayor of the District of Columbia of the *approximate time, place, cause, and circumstances* of the injury or damage" as a prerequisite to filing a cause of action against the District. D.C.Code § 12–309 (emphasis added). It would be illogical to read the statute as requiring the claimant to send notice at a point in time when she is unaware of the injury at all, let alone of the time, place, cause, or circumstances of the injury. *Cf. Haupt v. State*, 340 Md. 462, 667 A.2d 179, 186 (1995) (interpreting the Maryland Tort Claims Act, which requires a "written claim . . . within 180 days after the injury that is the basis of the claim" and a description of "the nature of the claim, including the date and place of the alleged tort," as being triggered, in the context of third-party claims, when the third-party claimant has been sued). Our interpretation also furthers the purposes of § 12–309: to provide relevant and time-

ly information that will enable the District of Columbia to investigate claims and prepare a defense, correct hazardous conditions, and settle meritorious claims. *Gwinn*, 434 A.2d at 1378. As we said in *Pitts*, its rationale is to protect the District against "unreasonable claims" and provide "reasonable notice," 391 A.2d at 807; its purpose is not to nakedly extinguish as many claims against the District as possible, even when it would be unreasonable to require the claimant to give notice. Our interpretation of the statute, therefore, allows for its application in a manner that makes it possible for claimants to comply while providing the required notice to the District as promptly as feasible. It also avoids a result that, because it is patently unfair and raises potential constitutional concerns, we do not lightly ascribe to the Congress. *Cf. Hill*, 345 A.2d at 869 (affirming imposition of § 12–309 bar where there was no "genuine issue as to whether [claimant, who had been incapacitated for five months,] reasonably could have complied"); *see id.* at 870 n. 4 (noting "the constitutional due process question which would be presented if [claimant's] acknowledged incapacity ... had more nearly approached or exceeded the six-month statutory notice period").

That is not to say that our holding necessarily ensures that Barnhardt will have a claim against the District of Columbia. For purposes of applying § 12–309 to the case at hand, the relevant date is the date on which Barnhardt first became aware (or should have become aware) of the fact that his property had been destroyed, not the date on which his property was actually destroyed. As noted above, there is some question as to when Barnhardt first became aware of his injury. The District of Columbia asserted in its brief to the United States Court of Appeals that Barnhardt was given information sufficient to put him on inquiry notice that his property might have been destroyed when he visited the WMATA Property Office on September 20, 2007. It seems undisputed that Barnhardt was told on that date, at least, that his property was not at WMATA where he expected to find it. At oral argument in this court, counsel for the District argued that from this information and from the fact that he had been processed by the Metropolitan Police Department when he was arrested in 2005, Barnhardt should have inferred that his property might have been transferred to the custody of the MPD.[6] But even this inference would not necessarily mean that Barnhardt should have known his property would subsequently be lost or destroyed by the MPD, and it was not until WMATA's filing on October 4, 2007, with the Superior Court that the transfer of the property to the MPD and its destruction was officially disclosed. In short, the record is unclear as to when Barnhardt first received actual notice or was put on inquiry notice of his injury. This point is noted in Barnhardt's opposition to the District's motion for summary judgment, which lists as a material issue as to which there is a genuine dispute, the notice he received in October 2007 concerning the destruction of his property. If Barnhardt had no knowledge that his property was destroyed until the filing by WMATA in the Superior Court on October 4, 2007, his letter to the Mayor's office, received March 25, 2008, would have been within the six-month deadline.

6. In his complaint and in a filing with Superior Court, dated November 2, 2007, in connection with his motion for an order for return of his property, Barnhardt disputed the District's assertion that he was taken to MPD's Sixth District Station for processing when he was arrested in 2005. According to Barnhardt, he was in the custody of Metro Transit Police, who took him to the hospital, and then to Superior Court for presentment.

If, however, on September 20, 2007, or at any time prior to September 25, 2007 (six months before the receipt by the Office of the Mayor of the notice of claim on March 25, 2008), Barnhardt had actual notice of his injury or was put on inquiry notice because, for example, he was given reason to believe that the return of his property was in jeopardy and he did not act diligently to secure its return, the notice of claim would have been untimely. *See Ross,* 697 A.2d at 16 (noting that six-month period began to run when mother knew child had ingested lead paint chips for which child was hospitalized and treated). The letters Barnhardt submitted to this court, see note 4, *supra,* could then become relevant. Three of these letters— to the Metro Transit Police Department on April 27, 2006, to the Office of the United States Attorney for the District of Columbia on February 28, 2007, and to the Office of Corporation Counsel on March 7, 2007—indicate that they were copied to the Office of the Mayor.

The District Court did not consider any of these questions about when Barnhardt became aware of his injury because they were irrelevant under the court's interpretation of § 12–309, which we now hold is incorrect. Moreover, the District Court, as far as we can tell, did not have the letters Barnhardt submitted to this court. If this case had come to us on appeal from the Superior Court of the District of Columbia, we would reverse and remand to the trial court with instructions for such further proceedings and factual development as might be appropriate to permit the court to apply the correct interpretation of § 12–309 to the facts of the case. In a certification from the federal appellate court, it is not for us to apply the law

we announce to the individual case, however, but only to answer the question certified. That we have done; it is for the federal courts to decide the case.

■ Finally, we note that compliance with § 12–309 is only a necessary, but not sufficient, condition of a waiver of sovereign immunity by the District of Columbia. *See Tucci v. District of Columbia,* 956 A.2d 684, 696 (D.C.2008).[7] Though "there is an undeniable connection between a statute like D.C.Code § 12–309 and the doctrine of sovereign immunity," *id.* at 695, the plaintiff's compliance with § 12–309 will not, on its own, prevent the District of Columbia from raising the defense of sovereign immunity. Though the burden of demonstrating governmental immunity is on the defendant, *Aguehounde v. District of Columbia,* 666 A.2d 443, 455 n. 2 (D.C. 1995), once that burden is carried, "[a] waiver of sovereign immunity must be found in some other source—a separate statute ... or our common law." *Tucci,* 956 A.2d at 696; *see also Wade v. District of Columbia,* 310 A.2d 857, 860 (D.C.1973) (en banc) (explaining distinction between discretionary governmental functions, which are immune from suit at common law, and ministerial governmental functions, which are not).

## IV. CONCLUSION

We hold that D.C.Code § 12–309 does not bar claims against the District of Columbia if the claimant was not aware of the fact of injury until more than six months had already passed since the injury actually occurred. As soon as the claimant has actual notice or is put on inquiry notice of the injury, notice must be given to the

---

7. *See Tucci,* 956 A.2d at 695 (correcting the mistaken notion in some federal decisions, in reliance on dicta from our opinions, that § 12–309 constitutes a waiver of sovereign

immunity, citing *Ibrahim v. District of Columbia,* 539 F.Supp.2d 143, 148 (D.D.C.2008), and *Tibbs v. Williams,* 263 F.Supp.2d 39, 43 (D.D.C.2003)).

Mayor within six months or the claim will be precluded. Our answer to the certified question, therefore, is "no."

In accordance with D.C.Code § 11–723(g), the Clerk shall transmit a copy of this opinion to the United States Court of Appeals for the District of Columbia Circuit and to each of the parties.

*It is so ordered.*