Prophetess BROWN, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 02–CV–756.

District of Columbia Court of Appeals.

Argued June 17, 2003.
Decided July 15, 2004.

Jonathan Zucker, Washington, DC, with whom Steven R. Kiersh, was on the brief, for appellant.

James C. McKay, Jr., Senior Assistant Corporation Counsel, with whom Arabella W. Teal, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel at the time the brief was filed, were on the brief, for appellee.*

Before GLICKMAN and WASHINGTON, Associate Judges, and KING, Senior Judge.

WASHINGTON, Associate Judge:

In this case, we are called upon to determine when an injury occurs for purposes of notice pursuant to D.C.Code § 12–309 (2001) where the District of Columbia allegedly failed to diagnose an inmate's medical condition. William Brown, appellant Prophetess A. Brown's son, died five months after he was transferred to a Virginia prison from the District of Columbia Department of Corrections Lorton Correctional Facility (Lorton). Appellant claims that while Mr. Brown was incarcerated at Lorton, he was not given proper medical treatment, he suffered severe symptoms as a result, and he ultimately died from the Department of Corrections' (DOC) failure

---

* While this appeal was pending, the title of the District's chief attorney was changed. The Corporation Counsel is now known as the Attorney General for the District of Columbia. *See* Mayor's Order No. 2004–92, 51 D.C. Register 6052 (May 26, 2004).

to diagnose and treat his condition. In dismissing appellant's wrongful death and survival claims, the trial court found that appellant had not provided timely notice to the District pursuant to § 12–309 because she gave notice more than six months after Mr. Brown's injury. Appellant now appeals this decision.

 We hold today that, in cases brought against the District of Columbia pursuant to § 12–309, an injury that results from a physician's negligent failure to diagnose a medical condition occurs when the patient's condition worsens as a result of the physician's negligence. In light of this holding, we conclude that Mr. Brown's injury occurred at some point prior to his death. Because notice to the District was not provided until six months after Mr. Brown's death, appellant's notice to the District was untimely. Accordingly, we affirm.

## I.

Mr. Brown was incarcerated in the District of Columbia from March 11, 1997 to April 15, 1999. During his incarceration at Lorton, Mr. Brown complained of abdominal pain and chest pain on several occasions. He communicated his symptoms to the medical staff, his mother, and sister Ms. Cynthia Allen. Ms. Allen testified that, while at Lorton, Mr. Brown lost several pounds, frequently vomited, and often confessed that he believed he would ultimately die as a result of the substandard medical treatment. Although Mr. Brown was x-rayed by the District, the medical condition from which he ultimately died was not diagnosed. Rather, Mr. Brown was diagnosed as suffering from "indigestion," "musculoskeletal pain," and "dyspep-

sia." According to his relatives, Mr. Brown was treated primarily with Maalox.

On April 15, 1999, Mr. Brown was transferred from Lorton to the Virginia Department of Corrections at Sussex II State Prison (Sussex) in Waverly, Virginia.[1] At Sussex, Mr. Brown continued to experience severe symptoms. According to appellant's § 12–309 notice letter to the District, the following events occurred after Mr. Brown's transfer to Sussex. Mr. Brown became ill on August 17, 1999, and was taken to the clinic because he was vomiting and experiencing severe abdominal pain. He was released after a short stay in the infirmary. Mr. Brown again became very ill on September 28, 1999, and was taken to the Sussex clinic on an emergency basis. Over the next few days, Mr. Brown suffered from severe nausea, abdominal pain, and vomiting. On October 2, 1999, Mr. Brown was sent to the Southside Regional Medical Center for emergency medical treatment. At the hospital, Mr. Brown was treated for "left lower lobe pneumonia, continuous hiccups, dehydration, acute renal failure, hyperglycemia, and hypokelima." His vomit and stool tested positive for blood.

Mr. Brown died on October 4, 1999. According to appellant's § 12–309 letter, a preliminary autopsy revealed that he had suffered from a diaphragmatic hernia, which probably developed as a result of a stab wound he sustained in his rib cage prior to his incarceration at Lorton. The autopsy stated that the cause of death was "sepsis due to left intrathoracic transdiaphragmatic herniation of the small and large bowel."[2]

On April 3, 2000, appellant provided notice to the District of Mr. Brown's injury

1. The DOC had a contract with the VDOC whereby some inmates from the District would be transferred to Virginia facilities. Those Virginia facilities were to act as independent contractors for the District of Columbia.

2. As appellant explains in her principal brief, Mr. Brown's "intestines herniated into his

and thereafter filed a survival and wrongful death claim against the District. The District filed a motion to dismiss or for summary judgment, claiming that appellant had failed to comply with the notice requirement of D.C.Code § 12–309. The trial court agreed, granting appellee's motion for summary judgment, and dismissing the case. Specifically, the trial court noted that "if DOC injured [Mr. Brown], it had to do so while he was in its custody." Thus, for purposes of § 12–309, the court found that the notice period had to have commenced at least as of the last day of Mr. Brown's incarceration at Lorton. Because the District received notice eleven months after Mr. Brown's transfer from Lorton, the court found that notice was untimely. In addition, the court found that the notice period was not tolled because of the decedent's incarceration at Lorton.

Appellant contends that the trial court erred in granting summary judgment to the District based on untimely notice because: (1) the injury that triggered the notice period was Mr. Brown's death; (2) the notice period was tolled during the time Mr. Brown was incarcerated regardless of when the injury occurred; and (3) there was a genuine issue of material fact regarding Mr. Brown's knowledge of his injury. Despite the fact that appellant divides her argument into several parts, all of her arguments depend upon our concluding that the § 12–309 notice period began to run at the time of Mr. Brown's death.[3]

chest, they became entrapped there … [t]he blood supply to the intestines was cut off, the tissue died and infection set in which caused Mr. Brown's death."

**3.** In her complaint, appellant also raised a wrongful death claim and argued in her opposition to the summary judgment motion that she had not violated § 12–309 as to that

## II.

### A. Standard of Review

"Compliance with § 12–309 is a question of law that we review de novo." *District of Columbia v. Ross*, 697 A.2d 14, 17 (D.C.1997). "[C]ompliance with [§ 12–309] is mandatory as a prerequisite for filing suit against the District." *Gross v. District of Columbia*, 734 A.2d 1077, 1081 (D.C.1999) (quoting *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995)) (internal quotation marks omitted). D.C.Code § 12–309 provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the appropriate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

"[B]ecause it is in derogation of the common law principle of sovereign immunity, section 12–309 is to be construed narrowly against claimants. Section 12–309 is not, and does not function as, a statute of limitations. Rather, it imposes a notice requirement on everyone with a tort claim against the District of Columbia." *Dunmore*, 662 A.2d at 1359. Unlike a statute of limitations, which can be tolled through the discovery rule,[4] § 12–309 starts the

claim. Appellant, however, did not advance this argument on appeal.

**4.** The discovery rule states that the cause of action does not accrue "until the plaintiff knows or by the exercise of reasonable diligence should know of the injury, its cause in fact and some evidence of wrongdoing." *Hardi v. Mezzanotte*, 818 A.2d 974, 981 (D.C.

clock at the instant an injury or damage is sustained. *See Kelton v. District of Columbia,* 413 A.2d 919, 921 (D.C.1980).

■ The purposes of the statute are: "(1) to allow the District to investigate potential claims so that evidence may be gathered while still available, for example before the relevant sidewalk is paved over or the meter cover fixed, (2) to enable the District to correct defective conditions, thus increasing public safety, and (3) to facilitate settlement of meritorious claims and resistance of frivolous ones." *Hardy v. District of Columbia,* 616 A.2d 338, 340 (D.C.1992).

### B. Discussion

■ The central question in this appeal—when does the § 12–309 notice period begin to run where a claimant sues the District based on the alleged negligence of one of its physicians in failing to diagnose a medical condition—is one of first impression. Although we have previously addressed when the statute of limitations begins to run in similar medical malpractice cases, our decisions in those cases, while helpful, do not resolve the issue before us. For example, in *Hardi, supra* note 4, the plaintiff sued her physician for failure to diagnose diverticulitis, an infectious condition that affects the colon. Although the plaintiff, who had been treated for diverticulitis a few years earlier, suspected that she was experiencing a recurrence of the condition, her physician incorrectly diagnosed her as suffering from a gynecological condition. Relying on her physicians' diagnosis, the plaintiff underwent surgery to remove her reproductive organs. During surgery, the general surgeon conducting the operation discovered that the plaintiff's condition was, indeed, diverticulitis. Contending that the plaintiff's action was time barred, the defendant generally argued that the plaintiff's injury occurred when the defendant misdiagnosed her condition. We held, however, that the plaintiff neither knew nor could have known of her injury until her surgeon discovered the infection in her colon and informed her that her condition was diverticulitis. Thus, the statute of limitations began to run when the plaintiff discovered that she had been injured by her physician's negligence.[5]

■ In *Dunmore,* we rejected the notion that the discovery rule applied to cases brought under § 12–309. *Id.,* 662 A.2d at 1356. Therefore, unlike in *Hardi,* where we applied the discovery rule, the date of injury for § 12–309 is not when the claimant knew or should have known of his injury, but rather when that injury was actually sustained. In *Dunmore,* the patient had received negligent treatment from his physician that ultimately culminated in the amputation of his leg. Although the patient did not learn until much later that the physician's negligence necessitated the amputation, we found that the patient's claim was time barred. In reaching our decision, we acknowledged that the policy and purpose behind § 12–309 was to limit the District's general tort liability to only those cases where adequate notice was timely given. Consequently, we held that the six-month clock for notice under § 12–309 began to run when the plaintiff's injury (amputation of his leg) was sustained, not when the plaintiff knew or could have known of his physician's negligence.

Having previously determined that the six-month clock under § 12–309 begins to

---

2003) (citing *Morton v. National Med. Enters.,* 725 A.2d 462, 468 (D.C.1999)).

**5.** *See also Morton, supra* note 4, 725 A.2d at 469 (holding that plaintiffs' claims accrued when they knew that they were injured and had some evidence of defendant's negligence).

run when a claimant sustains an injury, we must determine when the injury was sustained in this case. We note at the outset that an injury stemming from a physician's failure to diagnose an illness or condition is inherently more difficult to ascertain than an injury such as the one sustained in *Dunmore*. In most negligence cases, there is either an immediate physical manifestation of an injury (*i.e.*, the negligence occurs concurrently with the injury) or the victim's condition is obviously worsened by specific negligent conduct. *See, e.g., Doe by Fein v. District of Columbia*, 697 A.2d 23 (D.C.1997) (burning injury after failure of District to investigate child neglect case and protect child); *Johnson–El v. District of Columbia*, 579 A.2d 163 (D.C.1990) (denial of medical treatment resulted in hair loss); *Gwinn v. District of Columbia*, 434 A.2d 1376 (D.C.1981) (eye injury after fight in school as a result of negligent supervision by school personnel).

In failure to diagnose cases, however, the point at which the injury caused by the negligence is sustained is more difficult to determine. This is so because the plaintiff is already suffering from some detrimental medical condition for which he or she is seeking treatment. Therefore, the resulting injury from the physician's negligent failure to diagnose the illness may not become apparent for some significant period of time after the medical appointment.

In this case, appellant provided notice to the District on April 3, 2000, one day short of six months after Mr. Brown's death. Because § 12–309 requires that notice be given within six months of the date of the injury, appellant's suit against the District will be barred unless we find that either the injury was Mr. Brown's death or that the notice period was tolled while the decedent was incarcerated.

Appellant argues that Mr. Brown's injury from the District's failure to diagnose his condition was his actual death on October 4, 1999. She argues that "[n]either the hole in Mr. Brown's diaphragm nor the migration of his intestines in and out of his chest cavity were the injury" because that condition existed before Mr. Brown sought the defendant's medical attention. She also argues that the injury could not be the symptoms which caused Mr. Brown such great pain while he was incarcerated at Lorton and Sussex.

Appellee, on the other hand, argues that Mr. Brown's injury occurred before his death either while he was imprisoned at Lorton or Sussex. Specifically, appellee contends that Mr. Brown's weight loss and abdominal pain at Lorton clearly indicate that he sustained an injury at that time. Appellee also argues that, even if we conclude that Mr. Brown did not sustain an injury while incarcerated at Lorton, the emergency treatment Mr. Brown received while at Sussex and Southside Regional Medical Center clearly indicate that he sustained an injury prior to October 4, 1999. In deciding between the competing arguments, we find three cases from other jurisdictions to be particularly persuasive in determining when an injury is sustained in a failure to diagnose case such as the present one.[6]

In *DeBoer v. Brown*, 138 Ariz. 168, 673 P.2d 912 (1983) (en banc), the Supreme Court of Arizona reasoned that in a failure

---

**6.** As appellee points out, these cases involve accrual of claims under statute of limitations, not notice-of-claim statutes such as § 12–309. The posture of our case and these cases is similar, however, because neither Arizona nor Virginia apply a discovery rule in medical malpractice cases and while Wisconsin law does contain a discovery rule for medical malpractice cases, the court in *Paul v. Skemp*, 242 Wis.2d 507, 625 N.W.2d 860 (2001) decided the timeliness of plaintiffs' claims based upon the "three-year injury rule of accrual," not on the discovery rule of accrual. *Id.* at 875.

to diagnose case, the "injury" is not the failure to diagnose the problem or the "mere continuance of the same problem in substantially the same state . . . ." *Id.* at 914. The injury, the court held, occurs when the medical problem develops "into a more serious condition which poses greater danger to the patient or which requires more extensive treatment." *Id.* Thus, the court concluded that the patient's injury was not his doctor's misdiagnosis of his lesion as a wart. Rather, the court found that patient's injury occurred when the "wart," which was actually a malignant tumor, began to grow inside his body and threaten his life expectancy. *Id.* at 915.

In *Paul, supra* note 6, the Supreme Court of Wisconsin faced this same issue and reached a similar conclusion. In that case, the patient suffered from persistent headaches, for which she sought treatment from her physicians. None of her physicians accurately diagnosed her condition, which was a malformed blood vessel in her brain. Several months after seeking treatment for her headaches, the malformation in the patient's brain ruptured and caused extensive hemorrhaging. The patient died one day after the rupture. In determining when the injury occurred, the Supreme Court of Wisconsin stated that "[a] misdiagnosis, in and of itself, is not, and cannot, be an actionable injury." *Id.* at 867. Thus, the court held that the "actionable injury arises when the misdiagnosis causes a greater harm than existed at the time of the misdiagnosis." *Id.* In *Paul,* the court found that the patient's injury for purposes of the statute of limitations did not occur on the day her condition was misdiagnosed. Rather, the injury occurred either at the time that the patient's blood vessel ruptured or at the time that her condition could no longer be treated.

Similarly, the Supreme Court of Virginia held in *St. George v. Pariser,* 253 Va. 329, 484 S.E.2d 888 (1997), that the injury stemming from a misdiagnosis is not the patient's original detrimental condition, but rather "the injury which later occurs because of the misdiagnosis and failure to treat." *Id.* at 891. In *St. George,* the patient suffered from a cancerous condition which her first physician misdiagnosed as benign. The court reasoned that, because "[I]n every misdiagnosis case, the patient has some type of medical problem at the time the physician is consulted," the patient's injury in this case was the detrimental alteration of her condition caused by her doctor's misdiagnosis. *Id.* The injury, the court said, was the point at which the patient's melanoma "altered its status" from a benign condition to a malignant cancer. *Id.*

Although these cases are not binding on this court, the rationale employed by these courts for determining when an injury occurs in a failure to diagnose case is sound. We, thus, adopt the rationale expressed in these cases and apply them to failure to diagnose cases under § 12–309. Because patients in these types of cases generally suffer from an ailment when they first seek treatment, we hold that the injury in these cases is the worsening or deterioration of the plaintiff's condition that results from the physician's failure to diagnose the patient's medical condition.[7]

Turning to the present case, we first note that the trial court failed to make a precise finding with respect to the date

---

7. This holding is consistent with our decision in *The George Washington Univ. v. Waas,* 648 A.2d 178 (D.C.1994), where we suggested that in a failure to diagnose case involving cancer, the "operative" injury was the spread of the patient's cancer. *Id.* at 182 (citing *McGill v.* *French,* 333 N.C. 209, 424 S.E.2d 108, 113 (1993)). Our discussion of the patient's injury in that case involved whether the patient was contributorily negligent in bringing about his delayed diagnosis.

upon which Mr. Brown was injured. Instead, the court found that "if DOC injured [Mr. Brown], it had to do so while he was in its custody." In light of our discussion above, however, the trial court's analysis is insufficient because the injury resulting from the District's failure to diagnose could have been sustained well after Mr. Brown was transferred from Lorton to Sussex. Therefore, in order to determine whether the trial court's decision was correct, we must review the record to determine whether as a matter of law Mr. Brown's condition worsened prior to October 3, 1999. If not, the filing of the § 12–309 notice was timely.

Our *de novo* review of the record leads us to conclude that the trial court's ultimate ruling was correct. Based on our review of the record, we are satisfied that Mr. Brown's condition worsened at the latest on October 2, 1999 when he was admitted to the emergency room. Specifically, the undisputed evidence revealed that on October 2, 1999, Mr. Brown was suffering from several other ailments in addition to the vomiting, nausea, and chest pains of which he had originally complained. By this date, Mr. Brown was also suffering from pneumonia, acute renal failure, dehydration, and continuous hiccups. Although we lack a sufficient record to state with medical certainty the precise date on which Mr. Brown's untreated condition worsened, no such record is needed because his dire condition on October 2 clearly indicates that his condition had worsened by this point. Indeed, at this time, Mr. Brown's condition posed such a great danger to him that he was ultimately unable to recover from it. Given our conclusion, therefore, we reach a similar outcome as the trial court. Because appellant's § 12–309 notice was not provided to the District until April 3, 2000—six months and one day after the latest date on which Mr. Brown's injury was sustained—her notice was untimely.

Having determined that at the latest Mr. Brown sustained his injury on October 2, appellant's remaining contentions may be addressed summarily. Appellant first contends that the notice period should have been tolled during Mr. Brown's period of incarceration. She next argues that summary judgment was improper because there was a genuine issue of material fact regarding whether Mr. Brown had knowledge of his injury. As for whether the notice period should have been tolled, we have already determined that "tolling principles applicable to statutes of limitations do not apply in § 12–309 cases." *Gross*, 734 A.2d at 1081 (citing *Doe by Fein*, 697 A.2d at 29). With respect to the second issue, whether Mr. Brown's knew the specifics of his injury or not is irrelevant to when the notice period begins. More specifically, we have held that the six-month clock under § 12–309 begins at the instant an injury is sustained regardless of whether the claimant was aware of the injury. *See Kelton*, 413 A.2d at 921 (holding that, where patient did not learn until several years later that her physician had conducted a tubal ligation on her without her knowledge, six-month notice clock began to run at time the injury was sustained).

For the foregoing reasons, the decision of the trial court is

*Affirmed.*

GLICKMAN, Associate Judge, concurring:

I join Judge Washington's opinion for the court and write separately only to emphasize that this appeal does not raise, and the opinion does not answer, two important open questions: (1) whether D.C.Code § 12–309 bars a claimant from suing the District of Columbia where the claimant did not give notice in the six-month period required by the statute because the claimant was justifiably unaware

during that period that he or she had sustained any injury at all, and (2) whether the District of Columbia may be barred from invoking § 12–309 to forestall a lawsuit where the claimant did not furnish the requisite timely notice because of concealment, misrepresentation, or other wrongful conduct on the part of the District's agents. I suspect that eventually this court will be presented with a case that raises one or the other of these questions.

While the two questions might arise in tandem, only the first has been addressed explicitly by past decisions of this court. In *District of Columbia v. Dunmore*, 662 A.2d 1356 (D.C.1995), a case of alleged medical malpractice at the District of Columbia General Hospital, we held that the so-called "discovery rule"[1] does not apply to the notice requirement of § 12–309. *Id.* at 1360–62. "[U]nder section 12–309," we stated, "the six-month clock begins to run from the moment the plaintiff sustains the injury, not from the moment a cause of action accrues." *Id.* at 1359. In so holding, we expressly left "for another day the more difficult issue of whether section 12–309 would bar a person from filing suit against the District when that person was unaware that he or she had suffered an injury and, as a consequence, had unknowingly allowed the six-month period to elapse." *Id.* at 1360 n. 13. We said that "[a]lthough we do not decide this point now, we think it would be far less ambitious to read 'injury' in section 12–309 as denoting an injury of which one is aware, rather than as meaning 'actionable injury' so as to incorporate the discovery rule *in toto.*" *Id.*[2]

We revisited this question but still did not answer it in *District of Columbia v. Ross*, 697 A.2d 14 (D.C.1997). Three years after she ingested paint chips at a District of Columbia public housing complex and was hospitalized and treated for lead poisoning, the infant claimant in *Ross* was diagnosed with neuropsychological damage. Only then did she file a notice of claim against the District. In holding that the notice was untimely, we reasoned that the claimant "sustained" injury triggering the six-month period of § 12–309 when her lead poisoning first came to light—"at least when the harmful material entered her body, *was discovered*, and resulted in significant medical procedures." *Id.* at 18 (emphasis supplied). For that reason, we deemed the case to be "significantly different from [a case involving] the total lack of awareness [of injury] envisioned in" *Dunmore*, on which we had "reserved judgment." *Id.* at 18. "Lack of full awareness of the seriousness of injury" is not sufficient, we stated, to "excuse failure to give notice of the fact of injury" at least once

1. "Under the discovery rule, a cause of action accrues when the plaintiff knows, or through the exercise of reasonable diligence should know, of '(1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.'" *Dunmore*, 662 A.2d at 1359 n. 12 (citation omitted).

2. This issue seemed to present itself in an earlier case, *Kelton v. District of Columbia*, 413 A.2d 919 (D.C.1980), but we did not reach it there. A physician at D.C. General Hospital performed an unauthorized tubal ligation on the claimant in *Kelton*, unbeknownst to her, when he delivered her child by Caesarean section. Years passed before the claimant learned that her fallopian tubes were not open. She then waited an additional eight months, however, before she sent a formal notice of claim to the District of Columbia. We held that because her discovery put the claimant on "inquiry notice that she might have suffered an actionable injury," her claim notice was untimely under § 12–309 even assuming that she could invoke the discovery rule for the period before she knew she had been injured. *Id.* at 921. As we subsequently explained in *Dunmore*, our discussion in *Kelton* did not presage our adoption of a discovery rule for § 12–309. *See Dunmore* 662 A.2d at 1361.

that fact is known. *Id.* at 19. Lack of any awareness, we realized, may be a different matter.

At first blush the present case might be thought to present one or both of the questions that I have identified and that have not been decided yet by this court. That is, it might appear that the District's doctors misled the claimant here into thinking that he had not sustained any injury even potentially attributable to them. For the reasons set forth in Judge Washington's opinion, however, that is not so. The claimant here knew or should have known that he had been injured by a possible misdiagnosis more than six months before a notice of claim was given to the District of Columbia. Harsh though it may seem, that mandates under our cases the result we reach. The court's opinion today therefore does not signal one way or the other how we would have decided this case if it had been one in which the claimant's injury was concealed from him.