*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-552

GEORGE P. FARRIS, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-6242-17)

(Hon. Robert R. Rigsby, Trial Judge)

(Argued May 20, 2021                                    Decided August 19, 2021)

*George R.A. Doumar*, with whom *Jonathan E. Levine* was on the brief, for appellant.

*Thais-Lyn Trayer*, Assistant Attorney General, for appellee. *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Lucy E. Pittman*, Assistant Attorney General, were on the brief for appellee.

Before GLICKMAN and MCLEESE, *Associate Judges*, and FISHER, *Senior Judge*.

Opinion for the court by *Associate Judge* GLICKMAN.

Opinion by *Associate Judge* MCLEESE, concurring in the judgment in part and dissenting in part, at page 20.

GLICKMAN, *Associate Judge*: George Farris seeks to hold the District of Columbia liable for extensive flooding damage to his home, which he attributes to the District's neglect of an alleyway that drained onto his adjacent property. The Superior Court granted summary judgment to the District on Mr. Farris's negligence claim, on the ground that he did not provide the District with timely pre-suit notice of the damage he sustained, as D.C. Code § 12-309(a) (2012 Repl.) required him to do. In addition, the court denied Mr. Farris's request to amend his answer to assert claims for just compensation under the Takings Clause of the Fifth Amendment, on the ground that the claims were legally insufficient. Mr. Farris challenges each of those rulings in this appeal. We affirm the rulings and the judgment of the Superior Court.

## I.

The property that is the subject of this case is an end-unit row house in Northeast D.C. that Mr. Farris purchased in 1980. On its north side, the row house abuts an alleyway owned by the District. After purchasing the property, Mr. Farris noticed that water drained from the alley into his basement and pooled against his foundation wall. Beginning in 1985, and again in 1991, 1992, 1999, and 2002, Mr. Farris sent letters to the Mayor complaining about the "increasing seepage and

leakage" problem created by the deterioration of the alley, unspecified "damage" to his home from the water drainage, and the District's continuing unresponsiveness to his calls and letters and its failure to repair the alley. In the last of these letters, Mr. Farris stated "[t]he ongoing damage reached the point last November [i.e., November 2001] that we could not in good conscious [*sic*] rent our property in our absence."[1] The District did not respond to any of these letters and took no action to address the drainage problem.[2]

None of the foregoing letters mentioned structural damage from the drainage. At some point, though, Mr. Farris became aware that the water seepage was eroding the foundation of his row house. On his own initiative, in 2002, Mr. Farris engaged a professional engineer to install steel bracing to prevent the foundation wall adjacent to the alley from collapsing. The bracing did not solve the problem, however. A structural engineer who inspected the foundation wall for Mr. Farris in 2008 found the wall "had already failed" by then, meaning it had "collapsed inside

---

[1] As Mr. Farris explained in his letters, for much of the time during these years he and his wife were stationed overseas at a United States embassy or other government facility.

[2] The District asserts it has no record of having received Mr. Farris's letters.

the basement." The engineer informed Mr. Farris that the wall needed to be "reconstructed, rebuilt."

Mr. Farris does not claim to have done anything further to repair the foundation wall or address the drainage problem until December 2015, when, he reported, the foundation wall "imploded" due to a "build up [*sic*] of hydrostatic pressure caused by the pooled drainage from the deteriorated [a]lley." Mr. Farris claims that, the following month, he provided timely written notice to the District of this structural damage in accordance with the requirements of D.C. Code § 12-309(a). Mr. Farris's letter, addressed to the Mayor, read in pertinent part as follows:

> My wife and I purchased our home at 732 6th Street, NE; Washington, DC 20002, in December 1980. From that time until now we have suffered increasing seepage and leakage into our home from the adjacent District alleyway, which continues to deteriorate due to the negligence of the District and DDOT. The house has been uninhabitable because of this since 2008.
>
> On 24 December 2015, the deterioration of the alley reached the point to allow water to percolate down and build enough hydrostatic pressure again [*sic*] our historic foundation to cause a partial collapse into our cellar.
>
> We have received no response from your predecessors and no work on the District's alleyway since before we lived there, which is will [*sic*] soon be 36 years. Would you please intervene and have the appropriate District agencies come to our aid before we lose our home?

Mr. Farris included copies of his earlier complaint letters as attachments to this January 2016 letter.

Although the District does not acknowledge it received this letter, District officials came to inspect the foundation wall of Mr. Farris's row house shortly after the December 24 "implosion." They confirmed the wall had collapsed, informed Mr. Farris that a District regulation requires homeowners to maintain "a safe, firm, and substantial" foundation, and told him he was responsible for abating the violation of that regulation.[3] After it became clear Mr. Farris would not repair the foundation wall, the District sought to perform the necessary repairs itself.[4] However, Mr. Farris refused to allow District employees to enter his house to carry out the required repairs.

In September 2017, the District filed suit in Superior Court to enjoin Mr. Farris from interfering with its efforts to abate the housing code violation. Mr. Farris answered the complaint pro se. After retaining counsel, he sought leave of court to amend his answer to assert counterclaims. The proposed counterclaims included (as pertinent here) a claim asserting that the District was negligent in failing to maintain

---

[3] *See* 14 D.C.M.R. § 704.1.

[4] Pursuant to D.C. Code § 42-3131.01 (2020 Repl.).

the alley so as to prevent it from flooding his property, and two claims asserting that the resulting flooding damage amounted to an unconstitutional taking of his property by the District without just compensation. One of the takings counts pled a federal cause of action for deprivation of constitutional rights under 42 U.S.C. § 1983, and the other alleged the taking as an inverse condemnation.[5]

The trial court eventually granted the District's motion for judgment on the pleadings and request for an injunction. Those rulings are not at issue in this appeal. At the same time, the court also granted Mr. Farris's motion for leave to file and pursue the negligence counterclaim. The court denied him leave to file his other proposed counterclaims, though. It held that the § 1983 and inverse condemnation counterclaims did not state a plausible claim for relief because they failed as a matter of law to allege a governmental taking within the meaning of the Fifth Amendment.

The District thereafter filed two motions for summary judgment on Mr. Farris's negligence claim. In its first motion, the District argued, *inter alia*, that the

---

[5] *See Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 550 (D.C. 2011) (defining "inverse condemnation" as the means of recovering "just compensation for a taking of his property when condemnation proceedings have not been instituted" (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 258 n.2 (1980), abrogated on other grounds by *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005))).

negligence claim was time-barred. The court denied the motion. After that denial, the District argued in a second motion that Mr. Farris failed to provide it with written notice within six months of sustaining the damage to his property on which his negligence claim was based, a precondition of his suit for unliquidated damages imposed by D.C. Code § 12-309(a). The court agreed that Mr. Farris did not give the District timely notice of his claim, and granted the second motion for summary judgment on that ground.

**II.**

Mr. Farris presents two claims of error. First, he argues that his January 2016 letter to the Mayor satisfied the statutory pre-suit notice requirement, and that the trial court erred in ruling that it was untimely. Second, he contends the trial court abused its discretion by denying his motion to add the counterclaims for the unconstitutional taking of his property on the ground that the takings claims would be futile as a matter of law on the facts he alleged.[6] We address each claim of error in turn.

---

[6] The District defends each of the foregoing trial court rulings, but it does not argue on appeal that the § 12-309(a) ruling applies to Mr. Farris's takings counterclaims. We have no occasion to consider that question in this case. *Cf. Jaiyeola v. District of Columbia*, 40 A.3d 356, 370 n.65 (D.C. 2012) (noting that

## A.  The Pre-Suit Notification Requirement

In reviewing the award of summary judgment to the District on Mr. Farris's negligence claim, we "apply[] the same standard as the trial court in considering the motion for summary judgment."[7]  That means we view the facts in the light most favorable to the non-moving party (Mr. Farris) and affirm the grant of summary judgment when there are no genuine issues of material fact and the moving party (the District) is entitled to judgment as a matter of law.[8]

On the record before us, the issue of Mr. Farris's "[c]ompliance with § 12-309(a) is a question of law that we review *de novo*."[9]  The statute provides that, with immaterial exceptions,

---

notice-of-claim statutes such as § 12-309 generally are not applied to federal causes of action (citing, *inter alia*, *Felder v. Casey*, 487 U.S. 131, 140 (1988), and *Brown v. United States*, 742 F.2d 1498, 1509-10 (D.C. Cir. 1984) (en banc))); *Gross v. District of Columbia*, 734 A.2d 1077, 1082 n.13 (D.C. 1999) ("The notice requirement of D.C. Code § 12-309 does not apply to claims under 42 U.S.C. § 1983." (citing *Johnson-El v. District of Columbia*, 579 A.2d 163, 170 (D.C. 1990))).

[7]  *Aziken v. District of Columbia*, 194 A.3d 31, 34 (D.C. 2018).

[8]  *Id.*

[9]  *Brown v. District of Columbia*, 853 A.2d 733, 736 (D.C. 2004) (quoting *District of Columbia v. Ross*, 697 A.2d 14, 17 (D.C. 1997)).

> an action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.[10]

This notice requirement was enacted "(1) to allow the District to investigate potential claims so that evidence may be gathered while still available, . . . (2) to enable the District to correct defective conditions, thus increasing public safety, and (3) to facilitate settlement of meritorious claims and resistance of frivolous ones."[11]

The trial court ruled that, based on the undisputed facts, Mr. Farris did not send written notice "within six months after the injury or damage was sustained." It reasoned that the "damage was sustained" in 1980, when Mr. Farris discovered that the alley was draining into his basement. Because he did not send notice within six months of the initial leak, the court concluded, Mr. Farris's negligence claim is barred by § 12-309.

---

[10] The District's Office of Risk Management provides information on its website as to the manner in which notice must be provided to comply with the requirements of § 12-309. *See Tort Liability Claims*, Office of Risk Management, https://orm.dc.gov/service/tort-liability-claims; https://perma.cc/TV8T-8UL5 (last visited August 4, 2021).

[11] *Tucci v. District of Columbia*, 956 A.2d 684, 694 n.8 (D.C. 2008) (quoting *Hardy v. District of Columbia*, 616 A.2d 338, 340 (D.C. 1992)).

Mr. Farris argues that the "damage" he is complaining about — serious structural damage to the foundation of his home, resulting in its collapse — was not "sustained" in 1980, when there merely was some seepage of water into his basement, but only much later — specifically, in December 2015, when the foundation wall finally "imploded" from the total eroding impact of the drainage over many years. Mr. Farris contends he satisfied the requirements of § 12-309(a) to provide timely notice of *that* damage because he sent written notice of it to the Mayor within a month of its occurrence, in January 2016. To hold otherwise, Mr. Farris asserts, would unreasonably require potential claimants to inundate the Mayor with preemptive notices within six months of even the most trivial injuries based on hypothetical possibilities of more serious injuries arising from them in the distant future.[12]

---

[12] In the trial court, and in his opening brief on appeal, Mr. Farris did not argue that any of his earlier letters to the Mayor fulfilled the requirements of § 12-309(a). However, in his reply brief in this court, Mr. Farris argued for the first time that his earlier letters provided timely notice. On its face, this alternative argument for reversal is unpersuasive, since none of the earlier letters attributed any structural damage to the drainage problem or indicated when such damage was sustained; nor was even the earliest letter sent within six months of when Mr. Farris admittedly became aware of the drainage problem in 1980. In any event, the alternative argument comes too late; "[i]t is the longstanding policy of this court not to consider arguments raised for the first time in a reply brief," *Stockard v. Moss*, 706 A.2d 561, 566 (D.C. 1997), and Mr. Farris has advanced no good reason for departing from that policy in this case.

In most circumstances, determining when "injury or damage was sustained" is straightforward. There is a discrete cause and a corresponding, discrete effect. When someone falls down the stairs, for example, "the injury is sustained at the moment of the fall."[13] This case is more difficult. We are presented not with a discrete cause and effect, but with a continuing cause — that is, the District's alleged negligent maintenance of the alley over a period of years — and continuing, worsening effects — the gradual erosion of Mr. Farris's foundation wall, culminating in its ultimate collapse.

In this situation, the text of § 12-309(a) offers minimal guidance. The statute does not define "injury or damage," nor does it define when either is "sustained."[14] Our case law, however, provides some guiding principles. We are enjoined to construe the notice requirement narrowly against claimants, because "it is in derogation of the common law principle of sovereign immunity."[15] Accordingly,

---

To the extent Mr. Farris presents other grounds for reversal for the first time in his reply brief — e.g., that the District waived § 12-309(a) by suing to enjoin his interference — those grounds also are waived and we decline to consider them.

[13] *Ross*, 697 A.2d at 18.

[14] Mr. Farris does not claim there is a material difference between "injury" and "damage" under § 12-309, so we leave that question for another day.

[15] *Brown*, 853 A.2d at 736.

"we interpret § 12-309's six-month period as being triggered upon the claimant's knowledge of the injury or damage itself,"[16] and "any doubt as to the proper timing for the giving of notice should be resolved in favor of earlier notice."[17] Claimants ordinarily must give notice as soon as they discover damage, even if they are not fully cognizant of its seriousness.[18] The rationale for insisting on such early notice — to enable the District not only to investigate the claim, but also to take steps to prevent or mitigate future damage — applies with full force if, and perhaps especially if, the infliction of the damage is on-going (as in this case).

These principles seemingly support the trial court's conclusion that Mr. Farris should have notified the District of his property damage as early as 1980, when he became aware of the runoff of water from the alley into his basement, and that his failure to do so at that time barred his later claim against the District for negligence in maintaining the alley. We hesitate to accept that conclusion, however, because it

---

[16] *Barnhardt v. District of Columbia*, 8 A.3d 1206, 1212 (D.C. 2010).

[17] *Ross*, 697 A.2d at 19.

[18] *Id.* ("Lack of full awareness of the seriousness of injury does not excuse failure to give notice of the fact of injury."); *see id.* (holding that child who ingested lead paint "sustained" an injury for § 12-309 purposes at that time, even though the symptoms of lead poisoning did not manifest until later).

appears any injury inflicted at that early point in time was, or may have been, relatively trivial — mere water seepage with no immediate structural consequences — and because it was so "qualitatively different"[19] from the destructive damage to his foundation wall that only later ensued.

Nonetheless, we must affirm the trial court's conclusion that Mr. Farris's letter of January 2016 failed to provide the timely notice required by § 12-309(a). There simply is no genuine dispute that, many years before he sent that letter to the Mayor, Mr. Farris was aware of the evolving structural damage to the foundation of his row house caused by the ongoing drainage from the alley. He was aware that the water seepage had eroded the foundation at least as early as 2001; this knowledge led him to install steel bracing to prevent a collapse. And in 2008, a structural engineer inspected the foundation and informed him the foundation wall had collapsed due to the water that had continued to seep in from the alley. By then at the very latest, Mr.

---

[19] *Id.* at 19 n.5. *Ross* may be read to imply that a failure to give timely notice of one type of injury does not necessarily foreclose a suit against the District for unliquidated damages attributable to a "qualitatively different" type of injury that only manifests at a later date, even if the two types of injury derive from the same cause.

Farris clearly had "sustained," and knew he had sustained, the kind of structural damage at issue in this case for purposes of the notice statute.[20]

Accordingly, we affirm the award of summary judgment to the District on Mr. Farris's negligence claim on the ground that Mr. Farris did not satisfy the pre-suit notice requirements of § 12-309(a).[21]

---

[20] We therefore find no merit in Mr. Farris's argument that § 12-309(a) cannot bar his negligence claim because the District's negligent failure to maintain the alley was a continuing tort that was still going on within the six-month period preceding his January 2016 letter. The continuing tort doctrine is inapplicable here. That doctrine can toll a statute of limitations, *see Beard v. Edmondson & Gallagher*, 790 A.2d 541, 548 (D.C. 2002), but "[§] 12-309 is not, and does not function as, a statute of limitations." *Brown*, 853 A.2d at 736; *see also Motley-Ivey v. District of Columbia*, 923 F. Supp. 2d 222, 228–29 (D.D.C. 2013) ("[I]n this Court's view, the continuing violations doctrine . . . finds no application in the context of exhaustion under § 12-309.").

[21] For the sake of clarity, we note that because § 12-309 does not apply to defenses, our holding is without prejudice to Mr. Farris's ability to seek recoupment or setoff in the event the District sues him to recover its costs in making repairs to his property, on the theory that the District itself was responsible for the necessity of those repairs. *See Adams v. District of Columbia*, 122 A.2d 765, 767 (D.C. 1956) ("The prevailing view . . . appears to be that by voluntarily submitting to a court's jurisdiction, the sovereign exposes itself to counterclaims by way of recoupment which arise out of the same circumstances which form the basis of the government's claim at least to the extent that such adverse claims do not exceed the amount claimed by the government.").

## B. Takings Claims

We review the trial court's denial of Mr. Farris's request for leave to amend his answer to assert takings counterclaims for abuse of discretion.[22]  Civil Rule 15 instructs courts to "freely give leave when justice so requires."[23]  Denial of leave to amend is justified, though, if, as the court determined in this case, the proposed amendment would be futile.[24]  An amendment is futile if it fails as a matter of law to state a claim upon which relief can be granted.[25]

Mr. Farris sought leave to assert constitutional takings claims in two counts, captioned "Violation of 28 [*sic*] U.S.C. § 1983" and "Inverse Condemnation."  Each count alleged that the District's prolonged failure to maintain the alley next to his home resulted in water runoff that damaged his property and deprived him of its use, and that this deprivation constituted a physical taking of his property without just

---

[22] *Sherman v. Adoption Ctr. of Washington, Inc.*, 741 A.2d 1031, 1037 (D.C. 1999).

[23] Super. Ct. Civ. R. 15(a)(3).

[24] *Miller-McGee v. Washington Hosp. Center*, 920 A.2d 430, 436 (D.C. 2007) (quoting *Epps v. Vogel*, 454 A.2d 320, 325 (D.C. 1982)).

[25] *Rife v. One West Bank, F.S.B.*, 873 F.3d 17, 21 (1st Cir. 2017) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).

compensation in violation of the Fifth Amendment.[26] "Whether a taking under the Fifth Amendment has occurred is a question of law with factual underpinnings."[27] The trial court rejected Mr. Farris's claim as futile for failing to state a plausible claim of a taking. We affirm the court's ruling, because a physical taking requires affirmative action by the government, and Mr. Farris asserted *only* the District's failure to act.[28]

---

[26] *See* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation.").

[27] *St. Bernard Parish Gov't v. United States*, 887 F.3d 1354, 1359 (Fed. Cir. 2018).

[28] So, for example, in his January 2016 letter, Mr. Farris wrote, "We have received no response from your predecessors *and no work on the District's alleyway since before we lived there,* which will soon be 36 years." (Emphasis added). Mr. Farris's expert, too, said that the drainage problem was caused not by the District building or repairing the alley improperly, but by a complete "lack of maintenance." The expert's report states: "*Lack of maintenance* over the past decades has resulted in the alley and the underlying sub-strata to deteriorate. . . . The combination of [several natural] forces, resulting from the *lack of alley maintenance*, is the proximate cause of the partial implosion." (Emphasis added). Mr. Farris's reply brief in this court reiterates that the government action at issue was a failure to act: "Here, the District's *failure to act* was also a government action that led to the physical intrusion of water into private property. . . . [T]he District here made a 'decision' *not to maintain the alley*." Reply Br. at 19 (emphasis added).

The reply brief does make the conclusory assertion that "the way the alley was constructed" contributed to the December 2015 implosion. But constructing something improperly is different from maintaining something improperly, and his amended complaint only alleges the latter — the District's "failure . . . to maintain the Alley." There does not appear to be any record support for a claim that the District constructed the alley improperly. Mr. Farris's expert never mentioned the

While "[g]overnment-induced flooding can constitute a taking,"[29] the flooding must result from affirmative governmental action, not mere inaction.[30] Mr. Farris's "failure to maintain" claims fail for this reason. *St. Bernard Parish Government v. United States* is instructive. In that case, New Orleans property owners alleged a taking without just compensation on the theory that the government's failure to maintain a waterway worsened the flooding of their property during Hurricane Katrina.[31] The Federal Circuit explained that the "failure to maintain" allegations did not support the plaintiffs' takings claims because "takings liability does not arise from government inaction or failure to act"[32]:

---

alley's construction; he only said it was "lack of maintenance" that has caused "the alley . . . to deteriorate."

[29] *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 26–27 (2012).

[30] *St. Bernard Parish Gov't*, 887 F.3d at 1361 ("*In the flooding context, in particular*, both Supreme Court precedent and our own precedent have uniformly based potential takings claims on affirmative government acts." (emphasis added)); *see also Nicholson v. United States*, 77 Fed. Cl. 605, 620 (Fed. Cl. 2007) ("In no case that we know of has a governmental agency's failure to act or to perform its duties correctly been ruled a taking."); Robert Melz, Cong. Research Serv., R42613, *Climate Change and Existing Law: A Survey of Legal Issues Past, Present, and Future* (2014) ("Generally, failure to act cannot be the basis of a taking claim.").

[31] *St. Bernard Parish Gov't*, 887 F.3d at 1357.

[32] *Id.* at 1361.

While the theory that the government failed to maintain or modify a government-constructed project may state a tort claim, it does not state a takings claim. A property loss compensable as a taking only results when the asserted invasion is the direct, natural, or probable result of authorized government action. On a takings theory, the government cannot be liable for failure to act, but only for affirmative acts by the government. The government's liability for a taking does not turn, as it would in tort, on its level of care. Instead, takings liability arises from an authorized activity. In both physical takings and regulatory takings, government liability has uniformly been based on affirmative acts by the government or its agent.[33]

---

[33] *Id.* at 1360–61 (internal citations and quotation marks omitted); *see also In re Chicago, Milwaukie, St. Paul and Pacific R. Co.*, 799 F.2d 317, 326 (7th Cir. 1986) ("Authorized acts of the government may be takings, the Court concluded, but unauthorized or mistaken ones are torts for which the officer alone is answerable (unless immune)."). Although some states have recognized passive takings, while others have not, state cases are not a reliable guide to interpreting the scope of the Fifth Amendment's Takings Clause. "State tests for what constitutes a compensable taking are all over the board, in part because state jurisprudence developed without any common-law antecedents and independently of federal law, and because a state action has traditionally been a prerequisite to pursuing a claim under federal law." *Dunn v. City of Milwaukie*, 328 P.3d 1261, 1272 n.15 (Or. 2014) (en banc). Moreover, it is often the case (though admittedly not always) that the wording of state "takings" clauses differs in material ways from the Takings Clause of the U.S. Constitution. *Compare* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."), *with* Colo. Const. art. 2, § 15 ("Private property shall not be taken *or damaged*, for public *or private use*, without just compensation." (emphasis added)). In contrast to the inconsistent state cases, interpretations of the U.S. Constitution's Takings Clause seem uniform on the point that passive takings are not takings at all.

Mr. Farris's proposed counterclaims based his takings claim solely on the District's failure to maintain the alley. He did not allege any affirmative action by the District — nothing, for example, like that in *Arkansas Game & Fish Commission v. United States*, the case on which he relies to support his taking-by-flooding claim. In that case, the Supreme Court held the United States could be liable for a temporary taking after the Army Corps of Engineers released water from the Clearwater Dam and flooded the plaintiff's land.[34] Opening the floodgates was affirmative conduct.[35] Failing to maintain an alley was not.

As the proposed counterclaims did not state a plausible takings claim, we hold that the trial court did not abuse its discretion by denying Mr. Farris leave to amend in order to assert them.

**III.**

For the foregoing reasons, we affirm the judgment of the Superior Court.

---

[34] 568 U.S. at 26–27.

[35] *See also St. Bernard Parish Gov't*, 887 F.3d at 1361 n.5 (citing similar cases); *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1351, 1355 (Fed. Cir. 2003) (holding that government's construction of a facility that increased storm water runoff onto the plaintiff's property could be the basis for an inverse condemnation claim).

MCLEESE, *Associate Judge*, concurring in the judgment in part and dissenting in part: The court decides two issues -- whether Mr. Farris provided timely notice to the District of Columbia after he sustained the damage at issue, and whether the trial court correctly held that Mr. Farris's counterclaims under the Takings Clause failed as a matter of law. I write separately because I find both issues to be more difficult than the court does. Ultimately, I agree with the court's resolution of the notice issue but disagree with the court's resolution of the Takings Clause issue. I therefore respectfully concur in the judgment in part and dissent in part.

## I.

In his negligence counterclaim, Mr. Farris alleges that a foundation wall of his house imploded in December 2015. Mr. Farris further alleges that the implosion was caused by the District of Columbia's long-standing negligence in failing to properly maintain an adjacent alley, which led to water runoff that caused the implosion. Under D.C. Code § 12-309(a) (2012 Repl.), Mr. Farris's negligence counterclaim is foreclosed unless Mr. Farris gave notice to the District of Columbia, "within six months after the injury or damage was sustained," "of the approximate time, place, cause, and circumstances of the injury or damage." The court holds that Mr. Farris's negligence counterclaim is barred under § 12-309(a), because Mr. Farris

sustained the damage at issue in this case by 2008 at the latest. *Supra* pp. 12-14. As the court explains, by his own account Mr. Farris was aware no later than 2008 that the District's alleged negligence was causing serious water damage to the foundation of his house. *Id.* at 13-14. I have several doubts about the court's holding.

First, the damage alleged in the complaint is the implosion of the foundation wall in 2015. As a matter of ordinary language and common sense, it seems quite strange to say that Mr. Farris sustained that damage in 2008, seven years before that damage occurred. *See generally, e.g.*, *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) ("[T]he words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.") (internal quotation marks omitted).

Second, the court appears to finesse the ordinary-language problem by viewing the damage at issue more abstractly, as serious water damage to the foundation, which Mr. Farris sustained by 2008 at the latest. It is unclear, however, what rule or approach the court is applying. The court expressly leaves open whether the damage at issue should be viewed even more abstractly, as any water damage to the foundation, in which case Mr. Farris would have sustained the damage at issue in the 1980s. *Supra* pp. 12-14. The court's apparent approach seems to raise

numerous unanswered questions. For example, if the damage at issue in this case was sustained in 2008, or 2001, or the 1980s, does that mean that Mr. Farris's sole obligation was to give notice to the District at the time of the initial damage, with no requirement of further notice when subsequent and more substantial damage occurred? As another example, to what extent, if any, does it matter that the damage in 2008 and the damage in 2015 stem from the same alleged cause (water damage caused by negligent maintenance of the alley)? Would the negligence counterclaim be foreclosed under § 12-309(a) if the damage in 2015 had occurred because a District-operated vehicle negligently hit the foundation wall, which had been weakened by prior water damage?

Third, I do not believe that the court's conclusion is compelled by the outcomes of our prior cases. The closest case of which I am aware is *District of Columbia v. Ross*, 697 A.2d 14 (D.C. 1997). In that case, a child's exposure to lead took place from 1990 to 1991 and was discovered in 1991 through a routine blood screening. *Id.* at 15-16. The child moved in 1991 and apparently had no further exposure. *Id.* at 16. Doctors could not test for neuropsychological damage until the child was older. *Id.* We held that the injury occurred in 1990-91, not in 1994 when the child later become old enough for doctors to determine the extent of the damage. *Id.* at 17-19. We concluded that the injury was sustained for purposes of § 12-309(a)

"at least when the [lead] entered [the child's] body, was discovered, and resulted in significant medical procedures." *Id.* at 18. This case would be more like *Ross* if, after flooding had caused significant damage of which Mr. Farris was aware, there was no further flooding and Mr. Farris's foundation wall eventually imploded solely as a delayed result of the earlier significant flooding. Conversely, *Ross* would be more like this case if the child had not moved, the child therefore continued to be exposed to lead, and the continued exposure caused greater physical harm. I do not believe that *Ross* clearly indicates how the latter hypothetical case (or the present case) should be decided.

Fourth, the approach that the court takes is not the only possible one. One could instead view the implosion of the foundation wall as constituting the damage sustained but limit Mr. Farris to the marginal damage caused by that implosion, precluding him from recovering for damage that had occurred earlier, in the 1980s, 2001, and 2008. Such an approach is sometimes taken in the context of continuing torts. *See, e.g.*, *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 548 (D.C. 2002) ("When the plaintiff is or should be aware that he or she is being injured by a continuing tort, the statute of limitations begins to run. The plaintiff then may recover only for injuries attributable to the part of the continuing tort that was

committed within the limitations period immediately preceding the date on which suit is brought.").

Despite these doubts, I conclude that Mr. Farris's negligence counterclaim is barred under § 12-309(a). Most importantly, as the court emphasizes, *supra* pp. 11-12, we must construe the notice requirement narrowly against claimants, because § 12-309 "is in derogation of the common law principle of sovereign immunity." *Brown v. District of Columbia*, 853 A.2d 733, 736 (D.C. 2004) (internal quotation marks omitted). "[A]ny doubt as to the proper timing for the giving of notice should be resolved in favor of earlier notice." *Ross*, 697 A.2d at 19. Under that approach, I agree that we are required to affirm the trial court's notice ruling. First, as the court notes, § 12-309(a) is not a statute of limitations, so the continuing-tort doctrine is not directly applicable. *Supra* p. 14 n.20. Second, even in the context of statutes of limitations, this court has not fully endorsed the continuing-tort doctrine. *E.g.*, *Nat'l R.R. Passenger Corp. v. Krouse*, 627 A.2d 489, 497-98 (D.C. 1993). Third, as noted, our prior cases do not clearly answer the notice question before us. Fourth, holding that notice was required in this case at least by 2008 does tend to advance the central purpose of § 12-309(a): "to give District of Columbia officials sufficient notice of a claim so as to enable them to gather all pertinent facts and, if possible, adjust the claim, as well as to protect the District from unreasonable claims." *Braxton v. Nat'l*

*Cap. Hous. Auth.*, 396 A.2d 215, 217 (D.C. 1978). Finally, in cases such as this, where the causes and/or manifestations of injury or damage are spread out over time, no approach is going to be free from difficulty.

Taken together, I conclude that there is doubt in this case as to the proper timing for the giving of notice. Under *Ross*, we are required to rule in favor of earlier notice. I therefore agree that the trial court correctly granted summary judgment to the District of Columbia on Mr. Farris's negligence counterclaim.

## II.

Mr. Farris also sought leave in the trial court to raise Takings Clause counterclaims. The trial court initially denied leave to raise those counterclaims on the ground that Mr. Farris had failed to allege a plausible claim of regulatory taking. Mr. Farris sought reconsideration, pointing out that he was also alleging a physical taking. The trial court denied reconsideration, concluding that Mr. Farris had also failed to raise a plausible claim of physical taking. Specifically, the trial court ruled that (1) a Takings Clause claim requires affirmative government action; and (2) Mr. Farris failed to allege affirmative action by the District of Columbia, instead alleging only a failure to maintain the alley.

The court affirms the trial court's ruling. *Supra* pp. 15-19. I view the trial court's ruling as premature, for both factual and legal reasons.

As the court explains, the trial court's ruling was in substance a determination that Mr. Farris's Takings Clause counterclaims were subject to dismissal for failure to state a claim. *Supra* p. 16. Under the applicable standard, the trial court was required to determine whether the counterclaims were "plausible on [their] face." *Silberberg v. Becker*, 191 A.3d 324, 331 (D.C. 2018) (internal quotation marks omitted). To be plausible on their face, claims must contain "factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

On the factual side, the Takings Clause counterclaims allege that the District "failed to properly maintain the [a]lley." Although that wording at first glance seems to suggest an omission, the wording actually is ambiguous. If a roofing contractor did subpar work, one might say that the contractor failed to properly repair the roof. That does not necessarily mean that the contractor took no action. In seeking leave to add the Takings Clause claims, Mr. Farris asserted that the flooding occurred as a result of "grading, drainage, and maintenance issues," which Mr. Farris indicated was "government action." In seeking reconsideration, Mr. Farris referred to the

District as "maintaining the [a]lley in a manner that allowed water to drain from the [a]lley onto Mr. Farris'[s] property." Moreover, because Mr. Farris was not permitted to add the Takings Clause counterclaims, it does not appear that there was discovery focused precisely on those counterclaims. Such discovery might shed light on whether Mr. Farris is challenging merely omissions or also affirmative actions by the District.

In light of the foregoing, it seems to me quite unclear that Mr. Farris's Takings Clause counterclaims rest solely on omissions. Thus, even assuming that Takings Clause claims must involve affirmative governmental action, the trial court's ruling seems premature. *See generally, e.g.*, *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 572 (D.C. 2011) (when trial court rules on motion to dismiss, "[a]ny uncertainties or ambiguities in the complaint must be resolved in favor of the pleader") (internal quotation marks omitted); *Sung Cho v. City of New York*, 910 F.3d 639, 642 n.1 (2d Cir. 2018) (same).

On the legal side, I tend to doubt the court's conclusion that all Takings Clause claims must involve at least some affirmative governmental action. It is true, as the court points out, that the relatively few federal decisions to have explicitly addressed

the issue appear to uniformly support that flat rule. *Supra* pp. 17-19 & n.30. For several reasons, however, I am skeptical that such a flat rule is warranted.

First, the Supreme Court has cautioned against flat rules in Takings Clause cases:

> We have recognized, however, that no magic formula enables a court to judge, in every case, whether a given government interference with property is a taking. In view of the nearly infinite variety of ways in which government actions or regulations can affect property interests, the Court has recognized few invariable rules in this area.

*Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012).

Second, the Supreme Court has also made clear that the distinction between acts and omissions may not necessarily be relevant in any given context. *See, e.g.*, *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) ("[T]here is no relevant difference between an act of commission and an act of omission in this context.") (internal quotation marks omitted). Relatedly, the line between acts and omissions can be very difficult to draw. *See, e.g.*, *White v. Rochford*, 592 F.2d 381, 384 (7th Cir. 1979) ("[I]t seems incongruous to suggest that liability [under 42 U.S.C. § 1983] should turn on the tenuous metaphysical construct which differentiates sins of omission and commission."); *Fultz v. Union-Com. Assocs.*, 683 N.W.2d 587, 591,

592 (Mich. 2004) (referring to distinction between misfeasance and nonfeasance as "slippery" and "often largely semantic and somewhat artificial") (internal quotation marks omitted).

Third, the federal cases do not appear to me to have articulated a persuasive rationale for categorically precluding Takings Clause claims that rest on governmental omissions. I recognize that analysis under the Takings Clause and analysis under tort law can vary quite significantly. I find it noteworthy, however, that the allegations in this case, even if they rested solely on omissions, would apparently be a potential basis for tort liability. *See* Restatement (Second) of Torts §§ 824(b) (failure to act can be basis for liability in nuisance) and 839 (discussing liability of possessor of land who fails to abate nuisance arising from artificial condition on land) (Am. L. Inst. 1979). It also seems to me possible that in some circumstances government inaction could result in a taking that would call for just compensation under the Takings Clause. For example, imagine the following situation: the government purchases a property through which a body of water runs; a preexisting structure on the government's property that is next to the body of water begins to fall into disrepair; a neighboring property owner alerts the government and asks the government to takes steps to keep the building from collapsing and blocking the body of water; the government refuses to do so; the building collapses into the

body of water; the body of water completely floods the neighboring property, depriving the neighboring property owner of all use of the property; and the government refuses to take any steps to alleviate the flooding. It is not obvious to me that the neighboring property owner in such a case would have no remedy under the Takings Clause.

Finally, commentators and some state courts have taken the view that governmental omissions can in some circumstances support a Takings Clause claim. J. Martinez, *Government Takings* § 3.2 (2020) ("Governmental conduct may take the form of affirmative action or may arise in the form of an omission.") (internal quotation marks omitted; citing state cases).

In sum, I am skeptical of the conclusion that governmental omissions can never result in a taking under the Takings Clause. I would not definitively resolve that issue at this juncture, however. For the reasons I have explained, I think that it was premature for the trial court to conclude that Mr. Farris's Takings Clause counterclaims rested entirely on governmental omissions. I therefore would vacate the trial court's order denying leave to add the Takings Clause counterclaims, and I would remand for further proceedings on those counterclaims, without at this time passing definitively on the broader question of the applicability of the Takings

Clause to governmental omissions. *See generally, e.g.*, *Abney v. United States*, 451 A.2d 78, 82 n.9 (D.C. 1982) ("It is a policy and practice of appellate courts that they 'will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.'") (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).

## III.

For the foregoing reasons, I concur in the judgment affirming the grant of summary judgment to the District on Mr. Farris's negligence counterclaim and respectfully dissent from the court's affirmance of the trial court's ruling that Mr. Farris's Taking Clause counterclaims fail as a matter of law.